266 So.2d 657 (1972)
Willard M. BUIE and Sara W. Buie, Petitioners,
v.
BARNETT FIRST NATIONAL BANK OF JACKSONVILLE, Respondent.
No. 41979.
Supreme Court of Florida.
July 12, 1972.
Rehearing Denied October 12, 1972.
Dawson, Galant, Maddox, Boyer & Sulik, Jacksonville, for petitioners.
George L. Hudspeth of Mahoney, Hadlow, Chambers & Adams, Jacksonville, for respondent.
ERVIN, Justice.
We review by conflict certiorari the decision on rehearing of the District Court of Appeal, First District, in the case of Barnett First National Bank of Jacksonville v. Buie, Fla.App. 1971, 255 So.2d 707.
The question involved is whether a bank is without liability for punitive damages where without resorting to statutorily prescribed repossession proceedings it physically seized and repossessed an automobile, when installment payments to the bank on the purchase loan contract for the automobile were not in default, because the bank believed the automobile was about to be seized by law enforcement officers, it having been told the son of the purchasers of the automobile allegedly used it in violation of narcotic laws.
The undisputed facts appear to be as follows from the trial transcript and record in the case under review:
Petitioners, Willard M. Buie and Sara W. Buie, plaintiffs below, in December 1968 purchased the subject automobile from Southside Motor Company and financed it through Respondent, Barnett National Bank. A blank contract form prepared by Barnett was signed by the Buies in the automobile dealer's office and their signatures were notarized. The form consists of five documents, two of which are blank powers of attorney.
On May 9, 1969 a narcotics agent with the Duval County Sheriff's office told *658 Walton O. Cone, an attorney for Barnett, that he had been told that the Buies' automobile had been involved in a narcotics violation by the Buies' son. However, there is no evidence in the case that the automobile had been used in a narcotics violation by anyone. Nevertheless, because of the above related information gained by Mr. Cone, Barnett, through its agents, seized and took possession of the automobile at the Buies' home, despite heated protests from Mr. Willard M. Buie that the Bank had no right or reason to do so.
Following the seizure of the automobile, the Buies sued the Bank for compensatory and punitive damages.
At the trial of the case Mr. Cone testified that he was well acquainted with the law, both state and federal, which would give Barnett the right to recover the vehicle from law enforcement authorities in the event it should be seized because it was used in violation of narcotic laws, but that Barnett elected to repossess the vehicle rather than follow the statutory procedure of recovering it from the authorities in the event it was seized by them, in order to save time and money. Mr. Cone testified he had become very experienced in the recovery of vehicles after they had been seized by the authorities, having handled at least seven prior cases for Barnett, and he testified that in every instance in which a vehicle had been seized by the authorities, state or federal, Barnett had recovered the vehicles from the authorities and that Barnett had not lost any vehicles in following the statutory procedure established by law.
The vehicle was taken from Mr. Buie by Steve Gay and Jack Zinkan, agents for the Bank, who had been told by Nick Pappas, Unit Manager of the Collection Department of Barnett, who, in turn, had been told by Mr. Cone, who, in turn, had been told by a police officer, who, in turn, had been told by another police officer that the Buie vehicle had been used by Buie's son in a narcotics violation. In any event, Nick Pappas, then thinking that the Buies were in default in their car payments, directed Steve Gay to "go out and pick up the car, [or] collect the balance in full." However, the May payment had been made by the Buies, received by Barnett, the check therefor deposited in the bank and returned to the Buies' bank, cleared by the Buies' bank and returned in the Buies' bank statement, all prior to the date of the taking of the vehicle, to-wit: May 9, 1969. Mr. Pappas was acquainted with the statutory procedure for the recovery of a vehicle in the event it should be seized by the authorities and had had experience with that procedure on prior occasions wherein the vehicles were ultimately recovered by Barnett. Mr. Pappas also testified that even when customers are, in fact, late in their car payments it is not customary for Barnett to take any repossession action for at least ten days.
Steve Gay testified that Pappas told him to go out "and to pick up our automobile," testifying further that Barnett considered the vehicle to be its automobile even though it was registered in the Buies' names. Steve Gay was accompanied by Jack Zinkan. Mr. Buie testified to a rather heated exchange between him, Mr. Gay, and Mr. Zinkan, during which Mr. Buie repeatedly stated "you're not getting my car." Mr. Zinkan stated, according to Mr. Buie, "well, we're going to take it anyway, if we don't take it on that reason [information that it had been used by the Buies' son in violation of narcotic laws] we're going to take it because you're behind in the payments." Mr. Buie testified that Gay and Zinkan used sharp, indignant tones. Mr. Buie told Zinkan, "Look, if you take the automobile, either way that you take it, you're stealing. The keys is on the piano there but, if you pick them up and take them out of here and take the automobile you're taking it as stolen property." Mr. Gay admitted that Mr. Buie said, "You know, you can't take any car, you don't have any right to take it," further stating that Mr. Buie was "quite upset." Mr. Zinkan testified that Mr. Buie *659 told them that if they took the car "it would be a repossession."
Although Steve Gay testified that he gave Mr. Buie his calling card and told him to call if he wanted extra time to raise the funds if he wanted to redeem the vehicle, he also admitted that his secretary promptly notified the Credit Bureau that Barnett had repossessed the Buie vehicle without giving any reason for the repossession, which effectively prevented Buie from being able to refinance the car through another institution, and, Mr. Buie testified without contradiction, that he had no money with which to pay off the balance on the car.
The evidence was uncontradicted that neither of the Buies ever signed any power of attorney designating one "Audrey M. Stamp of the Barnett National Bank" as attorney in fact, and that they never authorized Barnett or anyone else to fill in any blank powers of attorney. Nevertheless, after the vehicle was taken by Barnett from Buie in the manner hereinabove recited, and after Barnett admittedly received two letters from the Buies' attorney demanding return of the vehicle, Barnett filled in one of the blank powers of attorney which the Buies had signed for Southside Ford and not Barnett, designating "Audrey M. Stamp of Barnett First National Bank" as attorney in fact for Willard M. Buie, dating same July 16, 1969, and used that power of attorney to transfer the title out of Buie to an individual who had purchased the vehicle from Barnett after it was taken from Buie. Additionally, as before recited, all of Barnett's employees who testified and their attorney, testified that they were acquainted with the statutory procedure for recovering seized vehicles from the state and federal authorities and that the purpose of taking the Buies' vehicle before it was seized was to save Barnett time and money.
At trial the jury returned a verdict for the Buies against Barnett awarding $895 compensatory damages and $3000 punitive damages. On appeal the District Court First affirmed the judgment on said verdict but on rehearing reversed the award of punitive damages. 255 So.2d 707.
In petitioning this Court for writ of certiorari to review the decision of the District Court, Petitioners rely for conflict upon Winn & Lovett Grocery Co. v. Archer, 1936, 126 Fla. 308, 171 So. 214; Dr. P. Phillips & Sons v. Kilgore, 1943, 152 Fla. 578, 12 So.2d 465, and other cases.
In Winn & Lovett Grocery Co. v. Archer, supra, this Court said:
"Punitive or exemplary damages are allowable, however, solely as punishment or `smart money' to be inflicted for the malicious or wanton state of mind with which the defendant violated plaintiff's legal right, and can only be imposed in cases where either by direct or circumstantial evidence some reasonable basis for an inference of wantonness, actual malice, deliberation, gross negligence, or utter disregard of law on defendant's part may be legitimately drawn by the jury trying the case." (171 So. 222-223)
And:
"... They [punitive damages] are peculiarly left to the discretion of the jury as the degree of punishment to be inflicted must always be dependent on the circumstances of each case, as well as upon the demonstrated degree of malice, wantonness, oppression, or outrage found by the jury from the evidence... ." (171 So. 221 and 222)
Also in Dr. P. Phillips & Sons v. Kilgore, supra, 12 So.2d at 467, this Court said:
"Punitive or exemplary damages is an amount allowed over and above actual or compensatory damages. Its allowance depends on malice, moral turpitude, wantonness, or the outrageousness of the tort and is awarded as a deterrent to others inclined to commit a like offense. It is in the province of the trial court to determine as a matter of law whether or *660 not there is a basis for punitive damages and instruct the jury accordingly. Whether or not the elements are present to warrant it is for the jury in the light of all the facts of the case."
The District Court in the instant case in reversing the award of punitive damages gave its reasons as follows:
"... However, under the facts adduced in this record, construed in a light most favorable to the plaintiffs, it appeared that the representatives or employees of the appellant were only doing a job to which they were employed to do and the indications are that the officer or officers of appellant were acting under advice or counsel, and also under advice from the Sheriff's Office. These circumstances negate the idea of malice or wantonness, and we think the trial court was in error in so construing the evidence as to determine as a matter of law that there was a basis for punitive damages and should have so instructed the jury. (See Dr. P. Phillips & Sons, Inc. v. Kilgore, 152 Fla. 578, 12 So.2d 465 (1943))."
The pleadings, the orders and the final judgment of the trial court, constituting the record proper, clearly indicated to us that there was involved in the case  at least prima facie  sufficient ultimate facts falling within the discretion of the jury to allow it to decide the issue of whether an award of punitive damages should be made. The decision of the District Court on rehearing holding that as a matter of law the trial judge was in error in permitting the jury to decide the issue of an award of punitive damages manifested apparent conflict of decisions when considered in the light of the record proper. We thereupon decided to hear oral argument and afterwards carefully read the transcript of evidence. Our study of the transcript and the applicable law leads us to the final conclusion there resulted a direct conflict of decisions. We find the decision of the District Court conflicts with the principles of law quoted above from Winn & Lovett Grocery Co. v. Archer and Dr. P. Phillips & Sons v. Kilgore, and that there was an invasion of the jury's fact-finding discretion by the District Court in its holding there was no legal basis for an award of punitive damages. Compare Richards Company v. Harrison (DCA 1st) 262 So.2d 258.
We note the jury had before it the fact of Barnett's seizure of the automobile without process of law and that it had evidence the Bank's attorney and other personnel well knew the Bank had no right under long accepted legal principles protective of property rights to enter upon the Buies' premises and over their heated protests seize and repossess without a legal hearing the automobile on the hearsay information that the automobile had been involved in violation of narcotic laws.
From the evidence before it, the jury was well within its discretion in concluding the Bank acted unreasonably in bypassing well-known statutory procedures affording due process in repossessing the automobile and that it was subject to punitive damages. Compare Fuentes et al. v. Shevin et al., and Parham et al. v. Cortese et al., 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, decided June 12, 1972 by the United States Supreme Court. There, the Court invalidated Florida's replevin statute, F.S. Ch. 78, F.S.A., insofar as it failed to provide a hearing prior to a replevin seizure of personal property. The Court said: "For more than a century the central meaning of procedural due process has been clear: `Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must be notified.'" The Court added, "the Court has traditionally insisted that, whatever its form, opportunity for that hearing [due process] must be provided before the deprivation at issue takes effect." The jury in this case must have well understood these fundamentals even though they were not reemphasized by the United States Supreme *661 Court in the Fuentes case until after the jury's verdict herein.
We find no basis for the District Court's overturning as a matter of law the jury's discretionary determination that the facts of this particular case justified an award of punitive damages for the Bank's arbitrary "taking of the law in it's hands" in repossessing the automobile.
The decision of the District Court relative to the award of punitive damages is quashed with direction to reinstate the judgment of the trial court.
It is so ordered.
ROBERTS, C.J., and BOYD, McCAIN and DEKLE, JJ., concur.