288 So.2d 513 (1973)
GOVERNMENT EMPLOYEES INSURANCE COMPANY, a Corporation, Appellant,
v.
Harvey CAMPBELL, Appellee.
No. R-48.
District Court of Appeal of Florida, First District.
November 20, 1973.
On Rehearing February 7, 1974.
Rehearing Denied February 7, 1974.
*514 Benjamin W. Redding, Barron, Redding, Boggs & Hughes, Panama City, and Gurney, Gurney & Handley, Orlando, for appellant.
Lefferts L. Mabie, Jr., Levin, Warfield, Graff, Mabie & Rosenbloum, Pensacola, for appellee.
CARROLL, DONALD K., Judge.
The defendant in an action for damages has appealed from an adverse final judgment, based upon a jury verdict, entered by the Circuit Court for Escambia County.
This action was based upon an earlier action arising out of a collision between an automobile driven by the appellee's son and one driven by one Larry Washington, a minor. A jury trial resulted in a judgment against the appellee in the amount of $18,500 plus costs. On appeal we affirmed this judgment, as reported in Campbell v. Washington, 240 So.2d 340 (Fla.App. 1970).
At the time of the said collision the appellee was covered by a public liability insurance policy issued by the appellant with the policy limits of $10,000. In the final settlement after judgment the appellant paid this limit and the appellee paid the excess.
The present action was then filed by the appellee-plaintiff alleging that the defendant-insurer acted in bad faith in failing to settle the Washington case within the policy limits, claiming both compensatory and punitive damages. At the trial the jury returned a verdict against the defendant of $9,384 compensatory damages and $25,000 punitive damages. The court entered a judgment for $34,384 and assessed costs and attorney's fees in the amount of $9,500.
At the trial witnesses testified that Washington prior to his trial had offered to settle for $3,500 and the insurer came back with $2,000. Washington then demanded $5,000 and the insurer restated its $2,000 offer. Later Washington demanded $7,500 and the insurer raised its offer to $2,500 and also set up a reserve of $4,200.50.
In view of the evidence available concerning Washington's injuries and medical expenses, we cannot say that the mere fact that the insurer failed to settle the Washington case within the policy limits was evidence of bad faith on its part. Nevertheless, we adhere strongly to the rule that a public liability insurer must exercise good faith in the settlement of claims against its insureds in order to protect them against excess liability.
*515 In the recent case of Welborn v. American Liberty Insurance Company, 260 So.2d 229 (Fla.App. 1972), this Court had occasion to review the established rules concerning a public liability insurer's duties to settle within policy limits, saying:
"It has long been the law of this state that a liability insurance carrier owes an obligation to honestly and fairly negotiate the settlement of claims against its insured within the financial limits of the policy issued by it. As pronounced by our Supreme Court in Auto Mutual Indemnity Company v. Shaw [, 134 Fla. 815, 184 So. 852]:
`* * * The prevailing rule seems to be, however, that the insurer must act in good faith toward the assured in its effort to negotiate a settlement. This the defendant concedes, in complete accord with the holding in the Cooper Case, [American Mut. Liability Ins. Co. v. Cooper, 5 Cir., 61 F.2d 446] supra, that "the insurer cannot escape liability by acting upon what it considers to be for its own interest alone, but it must also appear that it acted in good faith and dealt fairly with the insured. * * * This relationship imposes upon the insurer the duty, not under the terms of the contract strictly speaking, but because of and flowing from it, to act honestly and in good faith toward the insured" considering that the action below cannot be sustained either upon the theory of negligence or of implied contract, but that it may be supported upon the allegations of bad faith exercised in the settlement negotiations by the defendant to the plaintiff. * * *'"
In other words, we feel and we find that a public liability insurer owes a high degree of good faith toward an insured in the settlement of a claim against the insured within the policy limits in order to protect the insured from having to pay the overage above the policy limits if the judgment should be in an amount above those limits. This does not mean, of course, that the insurer must immediately accept any offer of a claimant within the policy limits if the insurer's good faith and reasonable investigation of the facts and injuries shows that the offer is substantially excessive.
We hold, therefore, that the evidence at the trial of the case at bar was insufficient to support the jury's finding that the appellant-insurer was guilty of bad faith in refusing to settle the Washington claim within the policy limits.
Therefore, there was no basis for the jury to find compensatory damages in the amount of $9,384. This being so, there could be no basis for the punitive damages, for there was no evidence that the insurer's refusal to settle within the policy limits was malicious or otherwise so severe a breach of duty as to justify the award of punitive damages.
Finally, we think that the assessment of attorney's fees against the insurer of $9,500 was excessive in the light of the circumstances of this case.
For the foregoing reasons the judgment appealed from must be, and it is, reversed, and the cause is remanded with directions to set aside the judgment and dismiss the action.
Reversed and remanded with directions.
Opinion prepared by Judge DONALD K. CARROLL prior to his retirement.
RAWLS, C.J., and WIGGINTON, J., concur.

ON REHEARING
PER CURIAM.
By his petition for rehearing, appellee-insured has reiterated the facts and restated the arguments contained in his appellate brief on which he relied for affirmance of the judgment appealed. He again *516 recounts the evidence which he contends overwhelmingly establishes appellant-insurer's liability under the insurance policy issued by it. Assuming appellee's position in this regard to be sustainable by the record, the failure of an insurance carrier to settle a claim against it within policy limits for the amount and under the terms demanded by the claimant is not alone evidence of bad faith as a matter of law, even though the carrier may be convinced of its liability for indemnity under its insurance policy.
In addition to evidence of liability, appellee points to the negotiations for settlement of the injured plaintiff's claim which took place between his attorney and the attorney for appellant prior to the trial, and asserts that appellant's refusal to settle the claim within policy limits created a jury question of whether it acted in bad faith. The evidence reveals that the highest value placed by appellant on the injured party's claim was the sum of $2,500.00. The highest value placed by plaintiff on his own claim was the sum of $7,500.00, the acceptance of which his attorney was willing to recommend in settlement. Even so, by his proposal for settlement, he indicated a willingness to negotiate for less. After trial, the jury returned a verdict in favor of the injured plaintiff in the sum of $18,500.00. From the foregoing, it is self-evident that both parties were either guilty of a gross error of judgment in their evaluation of the injured party's claim prior to trial or the jury was excessively generous in its award of damages. In either event, it does not follow that such error in judgment by appellant in evaluating the claim against it constituted bad faith as a matter of law. Had appellant accepted the offer of the injured plaintiff to settle his claim for $7,500.00 before trial and settlement was made on that basis, could that plaintiff later have maintained a malpractice suit for damages against his own attorney for bad faith in having recommended settlement of his claim for less than one-half of what it was worth? We think such a position would be untenable and could not be sustained.
We adhere to the original opinion filed in this cause and hold that an error in judgment committed by a liability insurance carrier in evaluating a claim made against it is not evidence of bad faith as a matter of law even though the carrier may have been convinced of its liability under the insurance policy issued by it. There being no issue of fact to be resolved by the jury in this case, judgment should have been rendered in favor of appellant and the cause dismissed.
RAWLS, C.J., and WIGGINTON, Associate Judge, concur.
BOYER, J., dissents.
BOYER, Judge (dissenting).
I cannot concur with my distinguished predecessor and colleagues. Although I agree with the recitations of law contained in the opinion, I cannot agree that as a matter of law "the evidence at the trial of the case at bar was insufficient to support the jury's finding that the appellant-insurer was guilty of bad faith."
The facts are not in substantial conflict.
The defendant-appellant (insurer) was fully aware that it had only $10,000 policy exposure.
The injured party's initial demand for settlement of $3,500 was countered with the insurer's offer of $2,000. Although the insurer never offered the claimant more than $2,500 as settlement, it set up a reserve of $4,250.
On the liability side, the insurer's trial attorney in the initial personal injury action testified at the trial of the case sub judice that his feeling toward the case was such that he would have a 20 to 30 percent chance of winning. Less than a 50-50 chance on liability, I observe. An expert witness called by the defendant in the case sub judice testified that based upon a review *517 of the file, in his opinion there was only a 50-50 chance of winning the case on liability.
By letter dated April 1, 1969, the injured party's attorney quoted to the insurer's attorney the applicable Alabama law relative to minors and contributory negligence and in the same letter concluded by saying:
"I believe the case has a settlement value of $7,500.00. Certainly, its value is considerably more than $2,500.00. If you have a counteroffer in mind, please let me have it."
The above offer of settlement was transmitted to the insurer's claim examiner by letter dated April 4, 1969, but the suggestion by the injured party's attorney for a counter offer was ignored. Other settlement offers within the policy limits were repeatedly rejected by the insurer.
By letter dated April 16, 1969, the claim examiner was informed that the injured child was only eight years of age and that "he is not the brightest 8 year old that I have ever seen and a jury may very well conclude that he is not capable under Alabama law of contributory negligence. He also has an appealing appearance."
On June 3, 1969, the injured party's attorney for a second time informed the insurer's attorney that the injured child had sustained a permanent injury to his leg which would result in his left leg being shorter than his right leg for the remainder of his natural life and that he would be required to wear an orthopedic shoe or a shoe with a lift built under the shoe in order to compensate for the difference in leg lengths. He reiterated:
"I am confident that the law of Alabama means exactly what it says, that is, that contributory negligence is not a defense in this action unless the defendant establishes that Larry Washington had the maturity and discretion which is possessed by a child 14 years of age. I am confident that there will be no such evidence to establish that Larry had such discretion and prudence."
As I understand the law it is not the office of an appellate court to determine what verdict it would have rendered had it been the jury, but rather whether or not there was substantial credible evidence before the jury to sustain the verdict which it did in fact enter. In my opinion the jury could have found from the evidence in this case, and apparently it did find, that the insurer did not act in good faith in refusing to settle the injured party's claim in the suit giving rise to the case sub judice within the policy limits. In view of the evidence that the defense attorney thought he had only a 20 or 30 percent chance of winning, and knowledge that the child's injury was permanent resulting in one leg being one and one-half inches shorter than another I do not agree that we can say, as a matter of law, that the jury erred.
I would grant the motion for rehearing and affirm the judgment entered on the jury verdict by the trial court.