306 So.2d 525 (1974)
Harvey CAMPBELL, Petitioner,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, a Corporation, Respondent.
No. 45167.
Supreme Court of Florida.
December 18, 1974.
Rehearing Denied February 13, 1975.
*526 Lefferts L. Mabie, Jr., Levin, Warfield, Middlebrooks, Graff, Mabie, Rosenbloum & Magie, Pensacola, and Robert Orseck, of Podhurst, Orseck & Parks, Miami, for petitioner.
Benjamin W. Redding, Barron, Redding, Boggs & Hughes, Panama City, and Leon Handley, Gurney, Gurney & Handley, Orlando, for respondent.
ERVIN, Justice.
We review through writ of conflict certiorari the decision of the District Court of Appeal, First District, in Government Employees Insurance Co. v. Campbell, 288 So.2d 513.
The principal question involved in this review is whether from the factual situation appearing in the majority and dissenting opinions of the District Court it was proper for the District Court to reverse as a matter of law the trial court's judgment awarding compensatory and punitive damages to plaintiff, the insured, entered pursuant to a jury's verdict finding that the defendant, a public liability automobile insurer, had failed to exercise good faith in protecting its insured by a timely settlement of a claim of an injured child against insured as tort-feasor within policy limits of insurer's coverage, resulting in insured having to pay several thousand dollars excess above policy limits.
We first set forth portions of the District Court opinions in this cause appearing in 288 So.2d 513, et seq., including the majority opinions originally and on rehearing, and the dissenting opinion of Judge Boyer, in order to demonstrate conflict.
From the original majority opinion written by Judge Carroll for the District Court, it appears:
"This action was based upon an earlier action arising out of a collision between an automobile driven by the appellee's son and one driven by one Larry Washington, a minor.[*] A jury trial resulted in a judgment against the appellee in the amount of $18,500 plus costs. On appeal we affirmed this judgment, as reported in Campbell v. Washington, 240 So.2d 340 (Fla.App. 1970).
"At the time of the said collision the appellee was covered by a public liability insurance policy issued by the appellant with the policy limits of $10,000. In the final settlement after judgment the appellant paid this limit and the appellee paid the excess.
"The present action was then filed by the appellee-plaintiff alleging that the defendant-insurer acted in bad faith in failing to settle the Washington case within the policy limits, claiming both compensatory and punitive damages. At the trial the jury returned a verdict against the defendant of $9,384 compensatory damages and $25,000 punitive damages. The court entered a judgment for $34,384 and assessed costs and attorney's fees in the amount of $9,500.
"At the trial witnesses testified that Washington prior to his trial had offered to settle for $3,500 and the insurer came back with $2,000. Washington then demanded $5,000 and the insurer restated its $2,000 offer. Later Washington demanded $7,500 and the insurer raised its offer to $2,500 and also set up a reserve of $4,200.50 [Actually, $4,250.00.]
"In view of the evidence available concerning Washington's injuries and medical expenses, we cannot say that the mere fact that the insurer failed to settle the Washington case within the policy *527 limits was evidence of bad faith on its part... .
* * * * * *
"[2] We hold, therefore, that the evidence at the trial of the case at bar was insufficient to support the jury's finding that the appellant-insurer was guilty of bad faith in refusing to settle the Washington claim within the policy limits.
"Therefore, there was no basis for the jury to find compensatory damages in the amount of $9,384. This being so, there could be no basis for the punitive damages, for there was no evidence that the insurer's refusal to settle within the policy limits was malicious or otherwise so severe a breach of duty as to justify the award of punitive damages.
"[3] Finally, we think that the assessment of attorney's fees against the insurer of $9,500 was excessive in the light of the circumstances of this case." (288 So.2d at 514-515.)
On rehearing the majority of the District Court, Judges Rawls and Wigginton, adhered to the opinion written by Judge Carroll. Judge Boyer dissented. The majority said:
"... The evidence reveals that the highest value placed by appellant [insurer] on the injured party's claim was the sum of $2,500.00. The highest value placed by plaintiff [Washington] on his own claim was the sum of $7,500.00, the acceptance of which his attorney was willing to recommend in settlement. Even so, by his proposal for settlement, he indicated a willingness to negotiate for less. After trial, the jury returned a verdict in favor of the injured plaintiff in the sum of $18,500.00. From the foregoing, it is self-evident that both parties were either guilty of a gross error of judgment in their evaluation of the injured party's claim prior to trial or the jury was excessively generous in its award of damages. In either event, it does not follow that such error in judgment by appellant in evaluating the claim against it constituted bad faith as a matter of law. Had appellant accepted the offer of the injured plaintiff to settle his claim for $7,500.00 before trial and settlement was made on that basis, could that plaintiff later have maintained a malpractice suit for damages against his own attorney for bad faith in having recommended settlement of his claim for less than one-half of what it was worth? We think such a position would be untenable and could not be sustained." (288 So.2d at 516.)
Judge Boyer pointed out in his dissenting opinion:
"The defendant-appellant (insurer) was fully aware that it had only $10,000 policy exposure.
"The injured party's initial demand for settlement of $3,500 was countered with the insurer's offer of $2,000. Although the insurer never offered the claimant more than $2,500 as settlement, it set up a reserve of $4,250.
"On the liability side, the insurer's trial attorney in the initial personal injury action testified at the trial of the case sub judice that his feeling toward the case was such that he would have a 20 to 30 percent chance of winning. Less than a 50-50 chance on liability, I observe. An expert witness called by the defendant in the case sub judice testified that based upon a review of the file, in his opinion there was only a 50-50 chance of winning the case on liability.
"By letter dated April 1, 1969, the injured party's attorney quoted to the insurer's attorney the applicable Alabama law relative to minors and contributory negligence and in the same letter concluded by saying:
"`I believe the case has a settlement value of $7,500.00. Certainly, its value is considerably more than $2,500.00. If you have a counteroffer in mind, please let me have it.'

*528 "The above offer of settlement was transmitted to the insurer's claim examiner by letter dated April 4, 1969, but the suggestion by the injured party's attorney for a counter offer was ignored. Other settlement offers within the policy limits were repeatedly rejected by the insurer.
"By letter dated April 16, 1969, the claim examiner was informed that the injured child was only eight years of age and that `he is not the brightest 8 year old that I have ever seen and a jury may very well conclude that he is not capable under Alabama law of contributory negligence. He also has an appealing appearance.'
"On June 3, 1969, the injured party's attorney for a second time informed the insurer's attorney that the injured child had sustained a permanent injury to his leg which would result in his left leg being shorter than his right leg for the remainder of his natural life and that he would be required to wear an orthopedic shoe or a shoe with a lift built under the shoe in order to compensate for the difference in leg lengths. He reiterated:
"`I am confident that the law of Alabama means exactly what it says, that is, that contributory negligence is not a defense in this action unless the defendant establishes that Larry Washington had the maturity and discretion which is possessed by a child 14 years of age. I am confident that there will be no such evidence to establish that Larry had such discretion and prudence.'
"As I understand the law it is not the office of an appellate court to determine what verdict it would have rendered had it been the jury, but rather whether or not there was substantial credible evidence before the jury to sustain the verdict which it did in fact enter. In my opinion the jury could have found from the evidence in this case, and apparently it did find, that the insurer did not act in good faith in refusing to settle the injured party's claim in the suit giving rise to the case sub judice within the policy limits. In view of the evidence that the defense attorney thought he had only a 20 or 30 percent chance of winning, and knowledge that the child's injury was permanent resulting in one leg being one and one-half inches shorter than another I do not agree that we can say, as a matter of law, that the jury erred." (288 So.2d at 517.)
It appeared to us that conflict of decisions existed due to the nature of the several District Court opinions and we issued writ of certiorari. As for the dissenting opinion being a predicate for conflict certiorari, see Commerce National Bank in Lake Worth v. Safeco Ins. Co. (Fla. 1973), 24 So.2d 205. Having ascertained conflict existed we then examined the transcript of record, which bolstered our view of decisional conflict.
Conflict appeals between the instant District Court decision and Auto Mutual Indemnity Company v. Shaw, 134 Fla. 815, 184 So. 852. In the latter case it was held an insurance company owed an obligation to its insured by virtue of its contract to negotiate with claimant in good faith, and that its decision not to settle must be the result of weighing of probabilities in a fair and honest way; and that its decision should be honest and intelligent and a good faith conclusion based upon a knowledge of the facts and circumstances upon which liability was predicated and upon a knowledge of the nature and extent of the injuries as far as they reasonably could be ascertained.
Conflict was also predicated upon the holding of the Third District Court of Appeal in Old Equity Life Insurance Company v. Levenson (Fla.App. 1965), 177 So.2d 50. There, it was said:
"It is not the function of this or any other appellate court to substitute its judgment for the trier of fact, be it a jury or a trial judge, and although we *529 might have reached a different conclusion if we had been the initial arbitrator of the factual issues, we are not at liberty to substitute our judgment for that of the trier of the facts if there is evidence to support the complained of ruling and/or judgment. There is sufficient evidence in this record and, therefore, we are compelled to affirm."
Another basis for conflict is the announced rule of Florida case law that in determining whether there is good or bad faith in particular circumstances the issue is ordinarily left for a jury to decide. For example, in Sample v. Hundred Lakes Corporation, 107 Fla. 568, 145 So. 193, the circumstances involved whether a promissory note had been purchased in good faith. This Court answered saying:
"These facts, with all the other evidence in the case, should have gone to the jury as a basis for its determination of whether or not the note was purchased in good faith; that is, in legal good faith. The determination of this question would require the jury to determine whether or not the knowledge of these several conditions required the purchaser to make such inquiry as it could have made to determine whether or not the obligation could be enforced by the payee against the maker as a personal liability, and we must hold that the court committed error and invaded the province of the jury in directing a verdict for plaintiff in this case."
These cases were cited for conflict by Petitioner Campbell. We took them into consideration along with other pronouncements of this Court that usually jury determinations of factual circumstances of the nature of those herein should not be disturbed by appeal courts. See, for example, Westerman v. Shell City (Fla. 1972), 265 So.2d 43.
The District Court reversed the entire judgment for the insured, both compensatory and punitive damages, and attorney's fees. This included allowance therein for the excess of $8500 over policy limits which insured was required to pay Washington because of the failure of insurer to timely settle Washington's claim within the policy limits.
The District Court reversed in disregard of the following factual considerations which the jury decided showed bad faith of insurer in refusing to timely settle the Washington claim:
1. Insurer's trial attorney testified as to the Washington case that his feeling toward the case was that he would have only a 20 to 30 percentage chance of winning. He had this feeling even before the trial judge had directed out the defense of contributory negligence pursuant to Alabama law, in which state the accident occurred.
2. Carrier knew before trial that eight-year-old Larry Washington had suffered a pelvic injury manifested by separation of the symphysis pubis and separation of the sacroiliac joint, producing a difference in leg lengths of one and one-half inches which was a permanent deformity. Carrier knew Larry would be required to wear an orthopedic shoe permanently and he would not be able to compete or participate in athletic sports because of possible further damage to the pelvis.
3. Although insurer never offered claimant more than $2500 in settlement, it had set up a reserve of $4250. Three months before trial the injured claimant's attorney wrote insurer's attorney:
"I believe the case has a settlement value of $7500. Certainly its value is considerably more than $2500. If you have a counter offer in mind, please let me have it." (Emphasis added.)
He specifically advised insurer's counsel that the verdict in the Washington case would probably exceed $10,000. These offers and advices were ignored by carrier and its claims examiner.
4. Carrier's lawyer wrote the insured:

*530 "Your liability is doubtful and the injuries were not serious. However, we have not been able to get a reduction in the settlement demand."
This advice to insured did not square with the facts, because no counter offer or reduction of the $7500 offer of claimant was ever attempted by insurer.
5. After the Washington trial and denial of motion for new trial therein there was still opportunity for carrier to settle the judgment recovery of $18,500, pending its appeal. Claimant's attorney at that time indicated to carrier he would accept settlement on payment of the $10,000 policy coverage limit plus an assignment from the insured of the latter's right of action against carrier for failing to settle the case. The carrier refused the offer from Washington but inconsistently advised insured by letter:
"... the lowest settlement figure we have received is $16,000.00... . This would mean that it would take approximately $5500.00 from you to settle the judgment. I assume you would have us continue the appeal."
6. The insured was never advised by carrier after the Washington judgment and before it became final he could still have been protected from excess exposure by the payment by carrier of the amount of the policy limit plus an assignment by insured of his cause of action for the excess. This offer of Washington was not communicated to insured. Carrier's counsel testified his reason for not bringing Washington's offer to insured's attention was that "it was so illogical," disregarding the fact that he, carrier's counsel, had suggested it in the first place.
We are unimpressed with the statement and reasoning of the District Court on rehearing reading:
"... Had appellant accepted the offer of the injured plaintiff to settle his claim for $7,500.00 before trial and settlement was made on that basis, could that plaintiff later have maintained a malpractice suit for damages against his own attorney for bad faith in having recommended settlement of his claim for less than one-half of what it was worth? We think such a position would be untenable and could not be sustained." (288 So.2d at 516.)
This suggestion sets up a straw man and knocks him down. It is a hypothetical assumption of nonexistent facts designed to counter the bad faith failure of the insurer to timely settle the Washington claim within the limits of its coverage. Appellate courts are hardly at liberty to postulate converse facts as a predicate for substituting evidentiary findings guised as matters of law for a jury's verdict upon facts actually produced at trial. Postulated professional malpractice hardly can be equated to the actual facts to excuse the carrier as a matter of law. The reasoning employed was based on an irrelevant assumption of nonexistent facts and quite farfetched.
Bad faith in a factual situation of this kind is not a matter of law but is a question of fact for the jury. Compare South Florida Rail Company v. Rhoads (1889), 24 Fla. 40, 5 So. 633; Sample v. Hundred Lakes Corporation, supra; Central National Insurance Company v. Gonzales (Fla.App. 1974), 295 So.2d 694; Cheek v. Agricultural Insurance Co. of Watertown, N.Y., 432 F.2d 1267 (5th Cir.1970); Liberty Mutual Insurance Company v. Davis, 412 F.2d 475 (5th Cir.1969); Springer v. Citizens Casualty Company, 246 F.2d 123 (5th Cir.1957); Davis v. National Pioneer Insurance Company (Okla. App. 1973), 515 P.2d 580; Buie v. Barnett National Bank (Fla. 1972), 266 So.2d 657.
In Auto Mutual Indemnity Co. v. Shaw, supra, we aligned Florida with those states whose standards for determining liability in an excess judgment case is bad faith rather than negligence. We ruled therein that such matters as reasonable diligence and ordinary care were material in determining *531 bad faith. Traditionally, reasonable diligence and ordinary care are considerations of fact  not of law.
In this case the trial judge and jury agreed that the total failure of insurer to timely consider the interest of the insured while considering settlement offers and concealing from insured the offer made after trial and misrepresenting the gravity of the claim constituted elements of a reckless disregard of the rights of the insured. This continued recklessness was clearly substantiated by the Washington verdict and judgment for $18,500 against insured. Even after this verdict, carrier withheld from insured the Washington offer to release Campbell from liability by a settlement within policy limits and an assignment to Washington of Campbell's claim for the excess against insurer. It rejected this final offer of Washington's, resulting in Campbell being "stuck" with the $8500 excess. Instead, carrier falsely advised that it must appeal unless he was willing to pay $5500 on the liability.
Punitive damages are recoverable by an aggrieved to serve the predominant function of deterrence and punishment. In nearly all states punitive damages are recognized to be recoverable. They are no longer looked upon as monstrous but are awarded to vindicate wrongs arising from antisocial behavior. The incentive to bring actions for punitive damages is favored because it has been determined to be the most satisfactory way to correct evil-doing in areas not covered by the criminal law. Punitive damages have helped to maintain public tranquillity by permitting the wronged plaintiff to take his revenge in the courtroom and not by self-help.
Compensatory damages do not always fully compensate in grievous situations nor do they have a general salutary effect under prevailing conditions to promote fair treatment of the public. At best, litigation, even when successful is an inconvenience, often an ordeal. Compensatory damages do not sometimes offer reparation for mental invasion. Moreover, it is difficult to translate pain and suffering, disfiguration, loss of enjoyment of life, loss of prospects, into compensatory dollars. Punitive damages tend to bring to punishment types of certain cases of oppressive conduct, i.e., slanders, malice, cruelties; antisocial, unethical and unfair treatment, often criminally unpunishable and which in actual life go unnoticed in the criminal law. "Punitive damages ... are awarded to the injured party as a reward for his public service in bringing the wrongdoer to account," so stated the Mississippi Supreme Court in Neal v. Newburger Co. (1929), 154 Miss. 691, 700, 123 So. 861, 863.
Numerous cases are of record where awards of punitive damages were made: Thalidomide tranquilizing drug cases where hundreds of children were deformed; cases of outrageous highhandedness, e.g., (1) bus driver accusing sick passenger of drunkenness and keeping him off the bus; (2) shattering another's building by blasting "because it was cheaper to pay damages ... than to do the work in a different way" (Funk v. Kerbaugh, 222 Pa. 18, 19, 70 A. 953, 954 (1908); (3) interference with a dead body by disinterring it on the ground deceased was not of proper faith to be there buried; (4) auto sales agency's fraudulent practice of setting back speedometers on used cars, and others.
There has been a recent spate of cases, several out of California, that vividly underscore the point that insurance companies are vulnerable to punitive damage suits by their policyholders when carriers attempt to deal with their insureds unethically. See Fletcher v. Western National Life Insurance Company (1970), 10 Cal. App.3d 376, 89 Cal. Rptr. 78; Wetherbee v. United Insurance Co. of America (1968), 265 Cal. App.2d 921, 71 Cal. Rptr. 764, 18 Cal. App.3d 266, 95 Cal. Rptr. 678.
In Buie v. Barnett First National Bank of Jacksonville, supra, this Court following principles of law announced in Winn & *532 Lovett Grocery Co. v. Archer (1936), 126 Fla. 308, 171 So. 214, and Dr. P. Phillips & Sons v. Kilgore (1943), 152 Fla. 578, 12 So.2d 465, reversed the First District Court of Appeal. We there quoted from the Kilgore case as follows:
"`Punitive or exemplary damages is an amount allowed over and above actual or compensatory damages. Its allowance depends on malice, moral turpitude, wantonness, or the outrageousness of the tort and is awarded as a deterrent to others inclined to commit a like offense. It is in the province of the trial court to determine as a matter of law whether or not there is a basis for punitive damages and instruct the jury accordingly. Whether or not the elements are present to warrant it is for the jury in the light of all the facts of the case.'" (266 So.2d at 659-660.)
The trial judge in the instant case instructed the jury
"... that the issue for your determination ... is whether the defendant, Government Employees Insurance Company, acting through its employees and attorney in handling of the claim of Larry Washington ... against the policyholder, Harvey Campbell, acted in bad faith with its policyholder. That is the issue."
It appears to us the trial judge was not in error in concluding the course of conduct of the insurer with the policyholder was such the question of punitive damages should be decided by the jury. And the jury found from the recited facts the policyholder was entitled to punitive damages. We cannot as a matter of law gainsay them. There was involved the elements of concealment and misrepresentation  a continued course of dishonest dealing on the part of insurer toward insured.
The damages awarded insured arose out of the contractual duty of the insurer to defend the insured against the liability arising from Larry Washington's claim. Therefore, attorney's fees were recoverable pursuant to Section 627.428, F.S., as incident to the judgment recoveries of insured against insurer herein.
The decision of the District Court of Appeal is quashed with direction that on remand the judgment of the trial court be reinstated.
It is so ordered.
ADKINS, C.J., McCAIN, J., and SIEGENDORF, Circuit Judge, concur.
OVERTON, J., concurs in part and dissents in part with opinion, with which FERRIS, Circuit Judge, concurs.
OVERTON, Justice (concurring in part, dissenting in part).
I concur with the majority opinion to the extent that the verdict for the plaintiff in the trial court should be reinstated for compensatory damages and attorney's fees. The record reflects sufficient evidence to establish bad faith for lack of diligence and failure to exercise ordinary care. In my opinion, the plaintiff was entitled to be protected and made whole because of the misconduct of his insurer.
I dissent from that part of the majority opinion which allows punitive damages in this cause. The record and the evidence fail to establish a course of conduct that was malicious or intentional or such a severe breach of duty as to justify punitive damages.
I would reinstate the verdict as it pertains to compensatory damages and attorney's fees but set aside that part of the verdict pertaining to punitive damages.
FERRIS, Circuit Judge, concurs.
NOTES
[*] At the time of the accident Larry was eight years old and a pedestrian.