[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14947
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cv-24659-KMM

NORMA INES FEIJOO,
f.k.a. Norma Borroto,

                                        Plaintiff - Appellant,

versus

GEICO GENERAL INSURANCE COMPANY,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 1, 2017)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Norma Ines Feijoo ("Feijoo") appeals from the district court's final order

granting summary judgment in favor of Geico General Insurance Company

("GEICO"), in her action, brought on behalf of Jose Garcia ("Garcia"), the

GEICO-insured driver of a car that injured her.  In her complaint, Feijoo alleged that GEICO acted in bad faith in failing to settle her bodily injury claim against Garcia.  The district court concluded that no reasonable juror could find that GEICO acted in bad faith because it was evident from the undisputed record that "at all times GEICO was attempting to settle the claims against Garcia quickly and completely while undergoing a reasonable investigation of Feijoo's claim."  On appeal, Feijoo argues that the district court erred in granting summary judgment to GEICO because GEICO could and should have settled Feijoo's claim instead of choosing to go to trial, and GEICO failed to uphold its duty to communicate with its insured by failing to disclose to Garcia the counteroffers GEICO made in response to Feijoo's offers of settlement.  After careful review, we affirm.

We review a grant of summary judgment de novo, viewing all of the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.  Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of presenting "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any[,] that establish the absence of any genuine, material factual dispute."  Focus on the Family v. Pinellas

2

Suncoast Transit Auth., 344 F.3d 1263, 1272 (11th Cir. 2003) (quotation omitted).

Speculation or conjecture cannot create a genuine issue of material fact. Cordoba

v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "The mere existence of a

scintilla of evidence in support of the [non-moving party's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the

[non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

A federal court sitting in diversity applies the substantive law of the forum

state. Admiral Ins. Co. v. Feit Mgmt. Co., 321 F.3d 1326, 1328 (11th Cir. 2003).

Under Florida law an insurer owes a duty of good faith to its insured, which

requires the insurer to handle claims against its insured with "the same degree of

care and diligence as a person of ordinary care and prudence should exercise in the

management of his own business." Boston Old Colony Ins. Co. v. Gutierrez, 386

So.2d 783, 785 (Fla. 1980) (citations omitted).

> This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

Id. at 785 (citation omitted).

Florida law is clear that bad faith requires more than mere negligence.

Campbell v. Gov't Emps. Ins. Co., 306 So. 2d 525, 530 (Fla. 1974). To recover, a

3

plaintiff must demonstrate "a causal connection between the damages claimed and the insurer's bad faith." Perera v. U.S. Fid. & Guar. Co., 35 So. 3d 893, 903–04 (Fla. 2010). Bad faith is evaluated on a totality of the circumstances. Berges v. Infinity Ins. Co., 896 So. 2d 665, 680 (Fla. 2004). Ordinarily, this is a question for the jury, but summary judgment in bad faith actions is appropriate where the undisputed facts would not allow a reasonable jury to conclude the defendant acted in bad faith. Id.

On the undisputed facts before us, we agree with the district court that no reasonable jury could have concluded that GEICO acted in bad faith. As the record shows, from the time the accident occurred -- January 6, 2008 -- to the time it was notified that Feijoo had retained counsel -- June 12, 2008 -- GEICO made numerous attempts to obtain Feijoo's treatment information. Then, between its first contact with Feijoo's attorney and Feijoo's initial demand over a year later, GEICO made six calls and sent five letters seeking Feijoo's treatment information. The only response GEICO received was that Feijoo's counsel was still collecting medical records.

On August 31, 2009, GEICO received its first settlement offer. One week later, GEICO informed Garcia of the offer, provided him with a copy, informed him of the limits of his policy and the possibility of an excess judgment, advised him that he would be responsible for any excess, and notified him of his right to

retain counsel.  The demand packet included medical records that purported to establish that Feijoo had a permanent impairment rating to her total body of between five and ten percent, and had accumulated $17,710 of medical expenses, of which $13,073 were attributed to a three-month stretch of chiropractic care. GEICO allowed the offer to expire and responded with a counter offer of $3,484 because its claims adjuster concluded on the basis of her experience that the medical bills seemed excessive.  She was also doubtful that Feijoo's spinal injuries were caused by the accident given the minimal damage to Feijoo's vehicle and the fifteen-month delay between the conclusion of the chiropractic treatment and Feijoo's decision to seek orthopedic treatment.

GEICO received a second settlement offer in November of 2010.  This time Feijoo offered to settle the claim for $12,500.  GEICO again forwarded the settlement offer to Garcia.  By this point, GEICO had deposed Feijoo and learned that she had not felt any pain immediately after the accident, that she did not intend to pursue future medical treatment, and that she "absolutely" would not have surgery.  It also learned that her chiropractic treatment had consisted entirely of massages and hot and cold packs.  GEICO again allowed the offer to expire and submitted a counteroffer, this time for $5,125, which Feijoo rejected.

By the time of the final settlement offer, GEICO had retained an expert radiologist to review Feijoo's MRIs and an independent medical examiner to

5

evaluate Feijoo.  Both had concluded that Feijoo's injuries were degenerative in nature and the independent medical examiner had opined that he did not believe Feijoo's injuries were related to the accident.[1]  Feijoo, nonetheless, demanded the full $25,000 policy limit.   Again, GEICO informed Garcia of the offer, and rejected Feijoo's demand.  Only during trial did Feijoo change her testimony to say that she intended to have surgery -- this was a significant reversal, since $60,300 of the ultimate $105,300 jury verdict was assigned to future medical expenses.

In short, GEICO met its obligation to its insured at each step of the way. GEICO informed Garcia of each settlement offer, warned him of the potential for an excess judgment, and told him that he could hire his own counsel to protect him from an excess judgment if he so desired.  These communications complied with GEICO's duty to communicate with its insured.  See Boston, 386 So.2d at 785.  In addition, contrary to Feijoo's assertion, there is no authority for finding bad faith where an insurer discloses the plaintiff's settlement offer but not its own counteroffer.  In the two cases Feijoo cites for this proposition, the insurer had also failed to disclose the plaintiff's settlement offer -- a clear violation of Boston.  See, e.g., Taylor v. GEICO Indem. Co., No. 8:12-CV-2448-T-AEP, 2015 WL 6750821, at *4 (M.D. Fla. Nov. 5, 2015); Odom v. Canal Ins. Co., 582 So. 2d 1203, 1205 (Fla. Dist. Ct. App. 1991).

---

[1] Although the radiologist did not see any "acute post-traumatic abnormalit[ies]," he did not expressly state that he thought the injuries were unrelated to the accident.

Moreover, there is nothing in the record to suggest that GEICO's other conduct was inconsistent with its duty of good faith to its insured. As we've detailed already, GEICO repeatedly attempted to obtain medical records from Feijoo for well over a year, and, when it finally did, it learned about Feijoo's delay in treatment. GEICO immediately provided counsel to Garcia once Feijoo filed the underlying action against him state court. And all along the way, GEICO considered Feijoo's settlement offers, while investigating the claim and making counteroffers of its own. It sought an independent review of Feijoo's medical records, retaining two different physicians who confirmed that Feijoo's condition was degenerative and one of whom expressly opined that the injuries were unrelated to the accident.[2] Notably, GEICO made its decisions based on Feijoo's unequivocal pretrial position that she would not incur any future medical costs because she did not plan to have future treatment or surgery. On this record, we cannot say that GEICO's decisions to reject Feijoo's pretrial settlement offers were unreasonable.

As for Feijoo's generalized evidence that GEICO employees receive profit-sharing bonuses, these bonuses are not linked to any particular employee or decision. Thus, Feijoo has failed to show how there was a causal connection

---

[2] Feijoo argues that GEICO should have had medical evidence like this before deciding, based on its claims adjuster's conclusion, to reject Feijoo's first settlement offer. But even if she is right, she cannot establish the requisite causal link between this alleged deficiency and the excess judgment because both GEICO's medical professionals ultimately agreed with the adjuster's conclusions. See Perera, 35 So. 3d at 903–904.

7

between these bonuses and the excess judgment, as required by Florida law.  See Perera, 35 So. 3d at 903–904.  Similarly, Feijoo's evidence that GEICO documents its average loss payments -- which it must do in order to fulfill its requirements under Florida law -- also fails to draw any connection between this documentation and the decisions made in her case.  As for a pretrial comment by the GEICO-retained attorney that the case was a "slam dunk," it may have been overly optimistic, but, again, no evidence causally links that assessment to the excess judgment.

Finally, Feijoo cannot survive summary judgment based merely on the fact of an excess judgment.  This is especially true where, as here, over half the judgment -- $60,300 in future medical expenses -- is based on Feijoo's midtrial change in position on whether she would seek additional treatment.  We simply see no way how her decision, newly announced at trial, to seek surgery could have affected GEICO's pretrial decision concerning settlement.  Thus, because the totality of circumstances demonstrates that GEICO diligently pursued a reasonable settlement and upheld its duty to communicate with Garcia, we agree with the district court that no reasonable jury could find that GEICO acted in bad faith.

**AFFIRMED**.