[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11878

Non-Argument Calendar

_____

DARLENE DEARY,
individually and as assignee of Dwight Norman,

Plaintiff-Appellant,

*versus*

PROGRESSIVE AMERICAN INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:20-cv-80279-DMM

_____

Before WILSON, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

This insurance appeal turns on whether Progressive American Insurance Company handled Darlene Deary's personal injury claim against its insured, Dwight Norman, in bad faith. Deary, individually and as Norman's assignee, sued Progressive after it initially offered to settle her claim for an amount below Norman's policy limits. After careful consideration, we conclude that no reasonable jury could have found that Progressive acted in bad faith. Thus, we affirm.

## I.    BACKGROUND

On March 17, 2017, Deary and Norman were involved in a car accident. The next day, Progressive determined that Norman was one hundred percent at fault for the accident and identified Deary's mother Elizabeth Diente as the owner of the car that Deary was driving. The insurance adjuster assigned to the case called Diente that day and left a message. A few days later, the adjuster spoke with Diente, who told him that she was experiencing neck pain as a result of the accident. During the call, Diente mentioned that Deary "ha[d] pancreatic disease and now was in pain." On March 23, another Progressive employee met with both Deary and Diente, and the latter agreed to settle Diente's bodily injury claim against Norman for 500 dollars. Progressive's record of this meeting makes no mention of Deary mentioning injuries resulting

from the accident, and Deary stated that she was answering important text messages during the meeting.

About three weeks later, Deary notified Progressive through counsel that she had also sustained injuries from the accident, and Progressive promptly filed a claim. Progressive informed Norman of the new claim and began to investigate, discovering that Deary had been treated at an emergency room and that she had been involved in a car accident fifteen years earlier. Soon after, Progressive mailed Norman two letters, one via certified mail, advising him that: (1) a claim had been filed against him; (2) the claim might exceed his policy limits of $25,000 per person; and (3) Progressive would appoint him counsel if Deary filed suit. The certified letter was returned to Progressive as undelivered, but the other letter was not. About a week after mailing the letters, a Progressive adjuster called to discuss Deary's claim only to be told by Norman that he was unavailable to talk.

On July 17, Deary's counsel sent a letter to Progressive demanding that it settle for the full amount of Norman's policy limits no later than August 7. The letter included medical records documenting Deary's various treatments. These records confirmed that Deary first saw a doctor twelve days after the accident and that she was diagnosed with "acute pain due to trauma" as well as degenerative injuries. One of Deary's doctors noted that if her condition worsened, "definitive surgical intervention may be warranted." After receiving the demand, Progressive mailed Norman letters updating him on the claim, although Norman denies receiving them.

Progressive also requested that Deary's counsel provide her Personal Injury Protection logs and additional medical billing records to allow it to fully evaluate the claim. Ten days after Progressive's request, Deary's counsel furnished the relevant records. An adjuster then reviewed them and concluded that Deary's out of pocket expenses were just over 1,600 dollars. Using that information, Progressive's in-house claim evaluation software, and her own experience, the adjuster determined that an appropriate settlement range for Deary's claim was between 8,500 and 12,701 dollars.

On August 3, Progressive offered to settle Deary's claim for 8,500 dollars. The proposal included nearly 7,000 dollars in "general damages" which included pain and suffering and did not account for future medical expenses. Deary's counsel rejected the offer out of hand, replying that they would "not accept anything less than the [full policy] limits." Several days later, Deary's counsel sent Progressive a formal response that extended the demand deadline to August 14, again demanded the full policy limits, and stated that Deary would file suit if a proffer was not made by the new extended deadline. The renewed demand contained no additional information as to Deary's condition or medical records. Progressive requested another extension on August 7, which Deary denied. Based on its previous evaluation and the lack of any new medical documentation, Progressive re-offered 8,500 dollars on August 11. Deary's counsel rejected the offer on August 15, informing Progressive that Deary would be suing Norman and stating that they

would not negotiate any further. That day, Progressive mailed Norman an update advising that he would be sued, although he denies receiving it.

Progressive continued to seek updates on Deary's medical condition and documentation, but its efforts were rebuffed by counsel. On September 18, Deary's counsel sent Progressive a medical record confirming for the first time that she was scheduled to undergo surgery, although the surgery was later delayed. This new record arrived alongside a statement that Deary's "settlement demand for 25,000 dollars [was] hereby withdrawn and [that she would] proceed with filing a Complaint for Damages." But even after her formal withdrawal, Progressive continued to inquire about Deary's condition and the possibility of settling. Eventually, Progressive learned through discovery that Deary had been involved in another car accident, but it remained unsure of the exact date of her surgery. These new facts prompted a need for additional medical documentation to fully evaluate their effect on Deary's claim. On November 21, Deary filed suit.

About eight months after Deary had surgery and eleven months after she formally withdrew her offer of settlement, Progressive received documentation establishing that Deary underwent surgery on November 16, 2017, and that her gross medical bills exceeded Norman's policy limits. Progressive immediately instructed Norman's appointed counsel to file a proposal for settlement for the full amount of the policy limits, which Deary's

counsel rejected. Deary would go on to win a jury verdict against Norman for 332,500 dollars.

Following the verdict, Deary initiated the bad-faith action giving rise to this appeal. The district court granted summary judgment to Progressive and Deary timely appealed.

## II.    STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, viewing all facts and drawing all inferences in the light most favorable to the nonmoving party. *Eres v. Progressive Am. Ins. Co.*, 998 F.3d 1273, 1278 n.3 (11th Cir. 2021).

## III.    DISCUSSION

The only issue on appeal is whether the district court erred in concluding that no reasonable jury could find that Progressive acted in bad faith with respect to Deary's claim. Deary argues that summary judgment was improper because Progressive could and should have settled for the policy limits "if [it] had acted fairly and honestly" towards Norman. We disagree.

Under Florida law, which both parties agree governs the dispute, an insurer owes its insured a duty of good faith. *Mesa v. Clarendon Nat'l Ins. Co.,* 799 F.3d 1353, 1358–59 (11th Cir. 2015). Whether an insurer has fulfilled its good-faith obligations is evaluated using the "totality of the circumstances standard," which considers whether the insurer acted with "reasonable diligence" and "ordinary care." *Id.* at 1359 (quoting *Campbell v. Gov't Emps. Ins.*

*Co.*, 306 So. 2d 525, 530–31 (Fla. 1974)). The claimed damages from a judgment entered against the insured must also be causally connected to the insurer's alleged bad faith. *Id.* at 1359 (quoting *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 903–04 (Fla. 2010)). Although bad faith is ordinarily a jury question, we have affirmed summary judgment where "there is no sufficient evidence from which any reasonable jury could have concluded that there was bad faith on the part of the insurer." *Eres*, 998 F.3d 1273, 1278 (11th Cir. 2021) (quoting *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980)).

The undisputed facts reveal that Progressive acted with reasonable diligence and ordinary care for three reasons.

First, the record establishes that, from the moment it learned of the accident, Progressive took reasonable steps to communicate with its insured to protect Norman from the potential of an excess judgment. Good faith requires that an insurer "advise their insured… [of the] probable outcome of a lawsuit and warn him of the consequences of an excess judgment." *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. Dist. Ct. App. 1991). Within a day of the accident, Progressive determined that Norman was one-hundred percent liable for the accident and notified him of that determination. And when Deary later retained counsel, Progressive attempted to inform Norman by at least three methods of communication that: (1) her claim could potentially exceed the limits of his policy; and (2) it would appoint him counsel should a suit be filed. When told that Deary would be filing suit, Progressive

again immediately notified Norman. In sum, throughout the process Progressive attempted to keep Norman apprised of the changing circumstances of Deary's claim and his potential legal exposure. Deary's contention that several certified letters were returned as undeliverable does not compel a different conclusion, especially in the light of undisputed evidence that Progressive consistently attempted to reach Norman using multiple methods of communication.

Second, a reasonable jury could not find that Progressive's actions in making an offer to settle Deary's claim were evidence of bad faith simply because the initial offer failed to reach the policy limits. Under Florida law, disagreement over the valuation of a claim resulting in an insurance company's refusal to pay the demanded amount does not equate to *per se* bad faith. *See Cruz v. American United Ins. Co.,* 580 So. 2d 311, 312 (Fla. Dist. Ct. App. 1991) (affirming summary judgment to an insurer where the claim failed to settle because "[t]he legal standard governing an insurer's settlement conduct is one of reasonableness"). Instead, an insurer must only "give fair consideration to a settlement offer that is not unreasonable under the facts." *Boston Old Colony*, 386 So. 2d at 783. Here, we agree with the district court that the "undisputed facts of this case . . . reflect that Progressive simply disagreed about the value of [Deary]'s claim . . . " From the outset, Deary made clear she would accept nothing less than the limits of Norman's policy. But after an examination of the only medical documentation provided by Deary's counsel at the time of the settlement

offer, Progressive determined the value of her claim to be 8,500 dollars, including roughly 7,000 dollars in "general damages" that included non-economic damages such as pain and suffering. Progressive's offer was more than five times Deary's out-of-pocket expenses that were documented at the time. By contrast, Deary's demand for the full policy limits was equal to approximately sixteen times those same expenses. Of course, after Deary provided documents that substantiated a higher settlement demand, Progressive attempted to settle for an amount equal to the policy limits. But it was immediately rebuffed by Deary's counsel—conduct that factors into our analysis. *Pelaez v. Gov't Emps. Ins. Co.*, 13 F.4th 1243, 1254 (11th Cir. 2021) (There is a "difference between focusing on a claimant's actions, which would be improper, and factoring a claimant's actions into the totality of the circumstances analysis, which is not improper.").

Finally, Progressive's delay in tendering the policy limits until June 2018 is not evidence of bad faith. Deary, through counsel, had expressly disclaimed any willingness to settle as of September 18, 2017. In Florida, "[o]nce it [is] clear that [a claimant] [is] unwilling to settle with [one insured] and give him a complete release, [the insurance company] ha[s] no further opportunity to give fair consideration to a reasonable settlement offer" for that insured. *Contreras v. U.S. Sec. Ins. Co.*, 977 So. 2d. 16, 21 (Fla. Dist. Ct. App. 2006). Deary's September 18 communication formally withdrawing her settlement offer expressed just such an intention, and Progressive was not bound to try and overcome it once expressed. The

mere suggestion by Deary's expert that a claim settling after an express withdrawal "has happened" in other cases provides no grounds for a reasonable jury to conclude otherwise contra Deary's undisputed conduct in *this case*: expressly withdrawing a settlement offer for the policy limits in writing and through counsel.

## IV.    CONCLUSION

For the foregoing reasons, the district court's order granting summary judgment is **AFFIRMED.**