146 So.2d 615 (1962)
AMERICAN FIRE AND CASUALTY COMPANY, a Corporation Organized and Existing under the Laws of the State of Florida, Appellant,
v.
J.T. DAVIS, Appellee.
No. D-180.
District Court of Appeal of Florida. First District.
November 15, 1962.
*616 Keen, O'Kelley & Spitz, Tallahassee, for appellant.
Ausley, Ausley, McMullen, O'Bryan, Michaels & McGehee, Tallahassee, for appellee.
RAWLS, Judge.
This is a "negligent and bad faith refusal to settle" case, the complaint having been brought by the insured J.T. Davis against his insurer, American Fire & Casualty Company. Davis recovered a jury verdict in the sum of $13,232.23, from which American Fire has appealed.
There is no real dispute as to the facts. On October 15, 1959, Patricia Ann Davis, 19, while driving her father's automobile from Tallahassee to Quincy, attempted to pass a line of automobiles moving in the same direction and collided head-on with an automobile driven by one Weintraub. Both drivers suffered personal injuries. The Davis automobile was insured by American Fire against liability with maximum limits of $10,000 to each person and $5,000 property damage.[1] American Fire's records reveal that from the time it was apprised of the accident (which was immediately after the occurrence) no serious question of liability on its part existed[2]  the question being the amount of damages that Weintraub was entitled to recover.
Weintraub was a traveling salesman who earned in excess of $20,000 while working approximately five months out of a year. The accident occurred during his peak season. He was hospitalized for a few days and later showed some permanent back injury. On October 21, 1959, American Fire was furnished a report by its adjuster which outlined Weintraub's immediate claim to "total out" his 1959 Electra Buick for $4,000 to enable him to get back on the road in order to alleviate a huge loss of use and wage claim. This report reflected that Weintraub's offer had been refused by telephone authorization from the company. The report further recommended that a $2,000 property damage reserve for Weintraub's automobile and $5,000 personal injury damage reserve to Weintraub be established by American Fire. From this point on, it is apparent in reviewing American Fire's records pertaining to this claim, that its officials assumed the position that Weintraub was trying to "gouge" them, and that they were not going to attempt to negotiate any settlement until Weintraub made an offer of settlement that they considered to be within a negotiable range.
Weintraub settled his property damage claim with his collision carrier save for $545.00, and on March 16, 1960, his attorney offered to settle his personal injuries claim with American Fire for the sum of $9,950, plus the property damage claim for the sum of $545.00. When contacted by American Fire's adjuster, Davis agreed that the settlement offer was excessive; however, he urged that American Fire settle with Weintraub. Weintraub filed suit on April 6, 1960, in the U.S. District Court. *617 On April 14, 1960, Davis wrote to American Fire urging it to settle within the policy limits.
After suit was filed by Weintraub, American Fire retained Tallahassee counsel who consistently recommended that the company settle with Weintraub prior to trial, since the company had no reasonable defense to the action. No offer of settlement or offer to negotiate was made by American Fire prior to trial or during trial. On September 7, 1960, at a pre-trial conference, the U.S. District Trial Judge indicated he would direct a verdict on the question of liability in favor of Weintraub. Trial was had on September 27, 1960. After plaintiff Weintraub had presented his case and rested, American Fire offered no affirmative defense on behalf of defendant Davis. The trial judge directed a verdict on the question of liability, and the jury returned its verdict against Davis in the sum of $23,000. Subsequently, American Fire paid Weintraub the amount of its policy limits, plus interest, leaving an excess judgment in favor of Weintraub and against Davis in the sum of $12,656.35. Weintraub obtained a writ of execution, placed same in the hands of a Federal Marshal, and levy was attempted against Davis.
Davis, being unable to satisfy the excess judgment, brought this action against his insurer on the theory of negligence and bad faith in failing to settle the claim within the policy limits. From a verdict and judgment in favor of Davis, American Fire appealed, posing the following three points:
1. There is no evidence that the insurer acted in bad faith.
2. A judgment debtor, who has made no payment on the judgment against him, does not have a right of action against his liability insurer for the excess of the judgment over the coverage provided by the insurance policy on the theory that the insurer exercised bad faith in failing to settle the claim against him for an amount within the coverage.
3. F.S.A. § 627.0127 does not authorize the assessment against the insurer of a fee for the attorney for an insured in an action against the insurer for the excess of a judgment over the coverage provided by the policy.
First, we will dispose of appellant's assertion that there is no evidence of bad faith on the part of the insurer. In Auto Mutual Indemnity Company v. Shaw,[3] the Supreme Court in a case of first impression on this subject, laid down the rule applicable to the instant point, when it stated on page 859:
"* * * The prevailing rule seems to be, however, that the insurer must act in good faith toward the assured in its effort to negotiate a settlement. * * * [T]hat `the insurer cannot escape liability by acting upon what it considers to be for its own interest alone, but it must also appear that it acted in good faith and dealt fairly with the insured. * * * This relationship imposes upon the insurer the duty, not under the terms of the contract strictly speaking, but because of and flowing from it, to act honestly and in good faith toward the insured' * * *."
The record in this case is replete with evidence of bad faith on the part of the insurance company. Unfortunately, limitations of space prohibit publishing the entire working file of the company in handling this claim, for in our opinion, it discloses a callous, stubborn, inflexible attitude upon the part of the insurer who determined in the face of uncontroverted proof of a valid claim against their insured, that the insurance *618 company had no responsibility to attempt to effectuate a settlement. The insurance company, in complete control of the case, adopted this attitude notwithstanding their insured's continuous request to settle, without regard to their own attorney's advice that "this is a case that should be settled", in spite of the trial judge's announced decision two weeks prior to trial that he would direct a verdict on the question of liability, and contrary to the decision of their own officials at the home office who a few days prior to trial concluded, "We will have to make up our mind as to some offer in connection with this case." Irrespective of the foregoing facts, the company never evaluated the claim, or made an offer of any settlement. From the outset, the matter of liability was known to every person handling Weintraub's claim against Davis and American Fire; notwithstanding this knowledge, the company made no good faith offer to even negotiate with Weintraub  much less settle. Such procrastination, inaction and attitude constitutes bad faith on the part of American Fire.
We now go to American Fire's contention that Davis, having paid no part of the excess judgment, and being a salaried employee without assets subject to levy, has not proven any damages, and that the trial judge erred by instructing the jury as to the specific amount of money (this being the sum of the excess judgment) to include in its verdict if it found in favor of plaintiff Davis. The insurance company insists and we agree that this question has not heretofore been specifically decided in this jurisdiction. However, it has been touched upon in two decisions. In Canal Insurance Company v. Sturgis,[4] this Court considered the primary question of the right of a third party, such as Weintraub in the instant case, to institute suit for the amount of the excess judgment against the insurance company. The Court analyzed the specific terms of the policy and concluded that such terms would not permit the third party to sue the insurance company. It further found that: "No one can today question the legal right of the insured to sue the insurer for negligence or bad faith in failing to settle a claim within the policy limits for, if he has had to pay a part of the judgment, he has indeed suffered damages because of such failure of the insurer * * *."
National Mutual Insurance Company of District of Columbia v. Dotschay,[5] is the latest expression we have found from this jurisdiction upon the subject. The Dotschay case was complicated  beginning in the state trial court, transferred to the Federal trial court, appealed to the 5th Circuit Court of Appeal, reversed, again litigated in the state trial court, and appealed to the District Court of Appeal, Third District, where it was affirmed without opinion. Another suit was instituted in the state trial court, appealed to the District Court of Appeal, Third District, and affirmed with opinion. The two written opinions emanating from the Dotschay cases stand as authority for the following pertinent propositions:
1. The Federal opinion found that the Florida Courts had not decided the question of whether an insured must pay his judgment creditor the excess judgment prior to recovering from his insurer.
2. The District Court of Appeal, Third District, in a subsequent decision found that the majority view did not require the prepayment of an excess judgment by an insured to his judgment creditor prior to seeking recovery from his insured, and although this principle could not be applied to the case being considered due to the principle of res adjudicata, the majority of that court were of the opinion that the majority view was the better one.
*619 So, we are here confronted with a certain amount of dicta from this jurisdiction for both sides of the question, the Sturgis case stating: "If he has had to pay a part of the judgment, he has indeed suffered damages", and the Dotschay case reported in 134 So.2d 248, concluding that the prepayment of an excess judgment by an insured to his judgment creditor is not prerequisite to instituting suit.
A conflict exists in other jurisdictions upon this question. Some cases refer to "majority view", others state the "current of today's authorities generally is to give a cause of action in such circumstances." An exhaustive opinion is found in Lee v. Nationwide Insurance Company[6] which cites and discusses the major cases dealing with this subject and concludes on page 298 that:
"More acceptable, as we noted at the outset, is the view treating the extant, unpaid judgments as injuries in themselves, their overburden measuring the pecuniary damages."
Logically, it seems to us that the foregoing represents the law applicable to the instant cause.
Davis paid American Fire for liability insurance on his automobile, such policy of insurance meeting the minimum requirements of Florida's Financial Responsibility Act; the insurance company was required to exercise reasonable care and to act in good faith toward its assured in its efforts to negotiate and accomplish settlement with Weintraub; the company negligently handled the matter by not even evaluating Weintraub's claim and arbitrarily refused to negotiate; as a result of the breach of its duty to its assured an excess judgment was entered against Davis in the sum of $12,656.36, which judgment is now outstanding and increasing as interest is computed. Now the insurance company takes the position that Davis cannot collect on his judgment against it because he is a salaried man who has no assets liable for execution  that Davis has not sustained any damage. Such an argument in this era of credit living is illogical and void of merit. A man's credit in this day and age is one of his most valuable assets and without it, a substantial portion of the American people would be without their homes, washing machines, refrigerators, automobiles, television sets, and other mechanical paraphernalia that are now regarded as necessities of life. We hold that prior satisfaction of the excess judgment is not a prerequisite to bringing an action against one's insurer for damages due to negligence or bad faith in failing to settle a claim within the policy limits.
The last point concerns attorney's fees recovered by Davis in prosecuting the instant cause in the trial court. American Fire insists that F.S.A. § 627.0127 permits the award of attorney's fees only in suits on an insurance contract and that since the Sturgis case held that actions against the insurer for excess judgment was a tort action, the statute does not apply. On page 471 of the Sturgis case in 114 So.2d we find this statement:
"* * * As we view it, the amount in excess of the policy limits which an insured might in a proper case be able to recover against the insurer because of its negligence or bad faith in failing to compromise or settle a claim, is not truly of the character of `insurance', but rather constitutes damages resulting from the insurer's tort or breach of contract." [Emphasis supplied.]
And in the Shaw case 184 So. on page 859:
"* * * [C]onsidering that the action below cannot be sustained either upon the theory of negligence or of implied contract, but that it may be supported upon the allegations of bad faith exercised in the settlement negotiations by the defendant to the plaintiff."
*620 The theory of this action is the conduct of the insurance company arising out of the contract  a breach of duty that would not have been owed by the insurer to the insured had the contract of insurance not been in existence. Although a specific Florida decision construing the statute has not been found, we do find in the Dotschay[7] case an approval by the Third District Court of Appeal of applying the statute in such instances. In the opinion the author sets out that a $300.00 recovery on an excess judgment together with attorney's fees had been previously affirmed by that Court without opinion, and the opinion affirmed the excess judgment appealed in the sums of $4,500 and $300.00 together with an additional amount for attorney's fees.
Virginia Surety Company v. Russ,[8] involved suit by insured against insurer for breach of duty to defend an action against insured. The insured recovered damages incurred by successfully defending the suit and for his attorney's fee. The Supreme Court in affirming the judgment of the lower court clearly stated the principle of law applicable in the instant cause when it stated:
"* * * But from a consideration of the literal terms of the statute, as well as its general objectives, it seems to have been plainly intended that an insured should not be forced to bear the cost of representation in such litigation with his insurer when it terminates favorably to him."
Additional authority is found in American Fidelity & Casualty Company v. Greyhound Corporation[9] wherein the 5th Circuit Court of Appeals in an able opinion analyzed the statute and held same to be applicable in an excess judgment factual situation such as is present in the instant cause. We hold that the statute is applicable and that the trial judge did not err in awarding attorney's fees for the plaintiff who prevailed against his insurer in prosecuting this action in the trial court.
The judgment is affirmed.
CARROLL, DONALD K., C.J., and WIGGINTON, J., concur.
NOTES
[1] A pertinent provision of the contract of insurance is: "* * * [T]he company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."
[2] American Fire's records contained the following entry: "Patricia Ann Davis headed West on U S 90 about 3 miles West of Tallahassee started to go around a house trailer. She did not think that there were any ears in front of this trailer headed the same way. It was raining and the highway was wet. She had picked up speed to go around the trailer and discovered that she was meeting a car and that there were cars in front of the trailer so she couldn't cut back in. The pavement being wet she somehow lost control of the car and struck the oncoming car a 1959 Buick belonging to Joseph Weintraub of Birmingham, Alabama. Referred to General Adjustment Bureau, 10/16/39  3:00 P.M."
[3] Auto Mut. Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852, 859 (1938). Also see: American Fidelity & Casualty Co. v. Greyhound Corp., 258 F.2d 709 (5th Cir.1958); Tully v. Travelers Insurance Co., 118 F. Supp. 568 (N.D.Fla. 1954); and Dotschay v. National Mutual Insurance Company of the District of Columbia, 246 F.2d 221 (5th Cir.1957).
[4] Canal Insurance Company of Greenville, South Carolina v. Sturgis, 114 So.2d 469 (Fla.App.1st, 1959).
[5] National Mutual Insurance Company of District of Columbia v. Dotschay, 134 So.2d 248 (Fla.App.3d, 1961); Dotschay v. National Mutual Insurance Company, 246 F.2d 221 (5th Cir., 1957).
[6] Lee v. Nationwide Insurance Company, 286 F.2d 295 (4th Cir., 1961). Also see 40 A.L.R. 2d 162, 190, Anno.
[7] National Mutual Insurance Company of District of Columbia v. Dotschay, Footnote 5.
[8] Virginia Surety Company v. Russ, 86 So.2d 643, 644 (Fla. 1956).
[9] American Fidelity & Casualty Co. v. Greyhound Corp. Footnote 3.