313 So.2d 101 (1975)
TRAVELERS INDEMNITY COMPANY, Appellant,
v.
Gus George BUTCHIKAS, Appellee.
Nos. U-123 and U-385.
District Court of Appeal of Florida, First District.
May 9, 1975.
Rehearing Denied June 18, 1975.
A.G. Condon, Jr., Holsberry, Emmanuel, Sheppard, Mitchell & Condon, Pensacola, for appellant.
*102 Lefferts L. Mabie, Jr., Levin, Warfield, Graff, Mabie & Rosenbloum, Pensacola, for appellee.
McCORD, Judge.
Oral argument in this cause was heard by Acting Chief Judge Johnson and Judges Spector and Boyer. Judge Spector (now retired) subsequently recused himself from participation and the writer of this opinion was then assigned to replace Judge Spector and to write the opinion of the court.
This is an appeal from final judgment in the amount of $15,000 compensatory damages and $50,000 punitive damages, entered pursuant to a verdict in favor of appellee. It is an action to recover the amount of the excess above policy limits of judgments previously entered against appellee in a negligence suit brought by one Thompkins and his wife which arose out of an automobile-motorcycle accident. The compensatory damages awarded in the case sub judice represent $10,450 as the amount the previous judgments were in excess of the policy limits plus $4,550 damages for mental anguish.
Appellant first contends that there was no evidence of bad faith to support the verdict. The accident which was the subject of the suit in which the excess judgment was entered occurred on August 22, 1971. Jimmy W. Thompkins and his wife were plaintiffs and appellee, Gus George Butchikas, with his insurer, appellant here, were defendants. Butchikas had stopped his automobile at a stop sign and he then proceeded into the highway in the path of Thompkins' motorcycle. From the collision, Thompkins received a serious injury to his leg; a ligament in his knee was torn completely and another seriously stretched, resulting in 20% permanent injury to his leg. Butchikas reported the accident to appellant and it was referred to appellant's local claims office in Pensacola. The adjustor assigned to the case admitted that he never talked with Butchikas. He did not get Butchikas' version of the accident and did not take a statement from an eye witness passenger in Butchikas' car. Butchikas had represented to the adjustor that Thompkins was traveling at an excessive rate of speed under the circumstances, but this was not investigated by the adjustor. Shortly after the file was transmitted to him, the adjustor contacted Thompkins who told him that he only wanted them to pay his medical expenses and give him $75 to $100 a week until he could get back on his feet and go back to work. During that first month, Thompkins contacted the adjustor several times trying to get them to settle the matter on such basis. The adjustor received authorization to obtain medical information from Thompkins almost immediately. However, he never obtained a report from Thompkins' doctor nor did he get the emergency room record covering Thompkins' initial treatment.
Travelers set up at $6,000 reserve to cover the accident shortly after it was reported to them and before there were any medical records showing the 20% permanent injury suffered by Thompkins to his leg. It was apparent at the early stages that Thompkins wanted to settle the matter quickly and not go to court. The adjustor testified that the reason appellant did not investigate the case thoroughly was because his office was inadequately staffed and equipped.
On September 20, 1971, attorney James Swearingen wrote appellant's local office informing them that he was representing Thompkins. On November 3, 1971, he again wrote a letter to the claim office setting out the extent of the injuries suffered by Thompkins, the treatment rendered, the extent of his pain and suffering, loss of consortium, and the findings of the orthopedist that Thompkins would have a 20% permanent partial disability of his leg. The letter revealed that Thompkin's income had increased but it pointed out that he had to hire other people and to engage subcontractors to do the work that he could have done himself prior to the accident. *103 He offered to settle the case for $10,000.
At the trial, Mr. Swearingen testified that Thompkins wanted to settle the matter and get some money as quickly as possible; that he immediately evaluated the 20% permanent disability to the leg to itself be worth more than $10,000 since this was crippling to a man whose job (body repair on automobiles) required him to be stooping, bending and standing on his leg at all times. Over the two and one half months following the letter of November 3, Mr. Swearingen had a number of contacts or telephone conversations with the adjustor and each time related to him that he would be willing to settle for $10,000. On January 25, 1972, Swearingen made his final offer to settle and gave appellant until February 4 to reply. Receiving no response, he filed suit on February 25. The highest offer made by appellant was $6,000 to $6,500. Its highest evaluation of the claim was from $6,000 to $7,000. Its attorney's independent evaluation was $6,000.
A summary judgment had been entered against Butchikas and appellant on liability in the Thompkins case. Butchikas was neither informed of the nature of the injury to Thompkins nor of any of the offers of settlement nor of any possibility of an excess judgment being entered. He was not present during the trial but was on a trip abroad which he had planned prior to the accident. He was advised by appellant's attorney prior to trial that the case was one where the liability was against him and that it would only be a question of damages for the jury. His attorney decided that it would be best to let him go ahead on the trip he had planned rather than have him present at the trial on the issue of damages primarily because of the belligerent attitude exhibited by him toward Thompkins which could inflame the jury in favor of Thompkins and because he spoke with a Greek accent and would be hard for the jury to understand. According to Mr. Swearingen's letter of September 20, 1971, to appellant's Pensacola agent (which is in evidence), immediately after the accident Thompkins, who was pinned under Butchikas' automobile, pleaded with Butchikas to back the automobile off of him. Butchikas began cursing Thompkins stating that he could extricate himself and advising him that Thompkins was going to pay heavily for the bumper damage to his automobile.
Subsequent to the verdict, Thompkins' attorney made an offer to appellant to settle the claim for the $10,000 policy limits plus a "substantial contribution" from appellee Butchikas. Butchikas was not advised of such offer because appellant's counsel did not know where to reach him  he was on his trip out of the country at that time.
In Campbell v. Government Employees Insurance Company, Fla., 306 So.2d 525, the Supreme Court said:
"Bad faith in a factual sitation of this kind is not a matter of law but is a question of fact for the jury. Compare (numerous citations omitted).
In Auto Mutual Indemnity Co. v. Shaw, supra, [134 Fla. 815, 184 So. 852] we aligned Florida with those states whose standards for determining liability in an excess judgment case is bad faith rather than negligence. We ruled therein that such matters as reasonable diligence and ordinary care were material in determining bad faith. Traditionally, reasonable diligence and ordinary care are considerations of fact  not of law."
We find the evidence sufficient to support the verdict for compensatory damages, excluding the amount allowed for mental anguish.
Appellant contends that compensatory damages for mental anguish are not allowable in this action; that the trial court erred in overruling its objection to testimony on this element of damages and erred in overruling its objection to an instruction given on mental anguish. Appellant argues that damages for mental anguish *104 are not generally recoverable in an action for breach of contract and are allowable in such an action only when mental anguish may reasonable be held to have been within the contemplation of the contracting parties as a probable result of a breach of the contract at the time they entered into the contract. See Dunahoo v. Bess, 146 Fla. 182, 200 So. 541; Vol. 9A Fla. Jurisprudence (Damages), § 92, p. 325. We are unable to find that this element of damages was or reasonably would have been contemplated by the parties at the time they entered into this insurance contract. While, strictly speaking, an excess judgment action is not an action on the contract, it is an action growing out of the contract. We do not consider that mental anguish, which may result from the experience of the entry of a judgment in excess of an insured's policy limits is a legitimate element of damages in such a suit and appellee has cited no excess liability case in which such damages have been allowed.
Appellant finally contends that punitive damages should not have been allowed under the evidence of this case and in the alternative that the compensatory award of $4,550 for mental anguish and the $50,000 award of punitive damages were excessive. Punitive damages are recoverable in an excess liability case where they are justified by the evidence. See Campbell v. Government Employees Insurance Company, supra. While we find the evidence in the case sub judice sufficient to support the jury's award of compensatory damages covering the excess liability based upon bad faith, we find it insufficient to support an award of punitive damages. The evidence does not show that appellant insurance company acted with such malice, wantonness, willfulness, gross bad faith or reckless indifference to the rights of its insured as to justify the award of punitive damages.
Appellee has filed a motion for award of a reasonable attorney's fee for his attorney's services on this appeal. Under § 627.428, Florida Statutes, appellee's attorney is entitled to an attorney's fee for an appeal in which the insured prevails. Inasmuch as appellee has prevailed as to a part of the judgment which was under attack on this appeal, we consider that assessment of an attorney's fee is warranted under said statute. Since such assessment should be based upon evidence, the trial court shall determine and award appellee's attorney a reasonable fee for his representation of appellee on this appeal.
Reversed and remanded with directions to vacate the final judgment and enter final judgment for only the amount of the excess judgment ($10,450) plus the amount of the previous award of attorney's fee and costs and with directions to award appellee's attorney a reasonable fee for this appeal.
JOHNSON, Acting C.J., concurs.
BOYER, J., concurs in part and dissents in part.
BOYER, Judge (concurring in part and dissenting in part).
I concur in that part of the majority opinion in which affirmance is reached. I respectfully dissent as to those portions in which reversal is ordered.
As to compensatory damages for mental anguish, I am of the view that such should properly be recoverable in an excess judgment case bottomed on bad faith. (Campbell v. Government Employees Insurance Co., Sup.Ct. Fla. 1974, 306 So.2d 525) It is common knowledge that one of the reasons for obtaining liability insurance is to avoid mental worry and anxiety incident to being able to respond in damages arising out of an accident. Common sense dictates, it seems to me, that it must be in the minds of the parties to the contract of insurance (the insurer and the insured) that should the liability insurance carrier in bad faith fail to discharge its duties under the policy of insurance mental anguish on the part of *105 the insured must be the inevitable result. I am therefore unable to agree with the majority that such element of damages was not such as would have been reasonably contemplated by the parties at the time they entered into the insurance contract.
Further, I am unable to agree with reversal as to the jury's award of punitive damages in the case sub judice. That facet of this case is adequately covered by the opinion in the Supreme Court in Campbell v. Government Employees Insurance Co., supra, and the cases therein cited, which, in my view, requires affirmance here.
I also concur in that portion of the majority opinion directing the trial court to determine and award to appellee's attorney a reasonable fee for representation of the appellee on this appeal.
I would affirm.