317 So.2d 725 (1975)
Foy BAXTER and Annie Smith Baxter, Petitioners,
v.
ROYAL INDEMNITY COMPANY, Respondent.
No. 44842.
Supreme Court of Florida.
May 28, 1975.
Rehearing Denied September 25, 1975.
J. Ben Watkins, of Watkins & Hill, Miami, for petitioners.
J. Lewis Hall, Tallahassee, for respondent.
J.B. Spence of Spence, Payne & Masington, and Robert Orseck of Podhurst, Orseck & Parks, Miami for The Academy of Florida Trial Lawyers, amicus curiae.
ENGLAND, Justice.
This case is here on a petition for certiorari to the First District Court of Appeal, asking us to review an opinion reported at 285 So.2d 652. A majority of the Court tentatively accepted jurisdiction based on a conflict with other Florida appellate decisions,[1] and we considered the merits and reconsidered jurisdiction after both parties had waived oral argument. Our review of the full record and the briefs of counsel persuade us that the decision below is not in conflict with any Florida appellate case, and that we do not have jurisdiction to consider the merits.
Petitioners brought an action against their automobile insurance carrier after they had received the full amount payable under the uninsured motorist clause contained in their policy, seeking compensatory and punitive damages in excess of the policy's limits. Their second amended complaint was dismissed for failure to state a cause of action, and the First District Court of Appeal affirmed the dismissal.[2] A complete recital of the basis for petitioners' suit is set forth in the opinion below.
In denying petitioners the legal opportunity to recover more than the policy limits *726 from respondent, the district court held that there is no fiduciary relationship between the insureds and their insurer with respect to the carrier's liability under the uninsured motorist clause of an insurance contract, and that the parties occupy a debtor-creditor type relationship for purposes of this class of insurance protection.[3] In so deciding the district court recognized as valid, but distinguished, the body of law which has developed in this state to the effect that a fiduciary obligation does exist between insured and insurer under the bodily injury and property damage liability provisions of an automobile insurance contract.
Our review of the authorities alleged to establish the jurisdiction of this Court fails to reveal any conflict in appellate decisions which would authorize our review.
(1) Petitioners allege conflict with the decision of this Court[4] which holds that an insurance company must exercise good faith in order to invoke a contract appraisal (arbitration) clause as a defense to the claim of its insured. The Court in that case, however, merely held that an insured was privileged to come into court to enforce its insurance policy where the carrier invoked a damage-setting arbitration clause in bad faith, i.e., for the purpose of resolving both damages (which was proper under the contract clause) and liability (which was not). Nothing in that case conflicts with the district court's determination that no "excess" cause of action arises from a carrier's bad faith invocation of an arbitration clause expressly designed to fix both damages and liability, prior to paying the policy limits demanded.
(2) Petitioners allege conflict with the line of decisions which hold that insurance companies have a fiduciary obligation to their insureds[5] and to persons who stand in the legal shoes of their insureds.[6] All of those cases involve the carrier's liability for bodily injury or property damage, however, which are precisely the cases which the court below distinguished on policy grounds and did not disturb. Obviously those cases cannot be in conflict with the case now brought here for certiorari review.
(3) Petitioners allege conflict with the case law of Florida which authorizes the imposition of punitive damages in a common law action for fraud or malice,[7] and in tort for malice or an intentional wrong.[8] There is no direct conflict between these non-insurance cases and the district court's determination that no cause of action for punitive damages can be predicated on a carrier's insistence on contract arbitration.
(4) Finally, petitioners allege conflict with Government Employees Insurance Co. v. Whitaker, 218 So.2d 198 (1st Dist.Ct. Ct.App. 1969), a case which did involve an interpretation of the uninsured motorist clause of an insurance contract. In that case the court held that the carrier could not resort to arbitration after it had refused to deal in good faith to resolve its insured's claim for compensation, and that the insured could proceed in the courts of this state to determine, within policy limits, *727 the amount of his claim. The court held that the carrier, by its conduct, had waived its right to invoke arbitration. Government Employees is the antithesis of the case now before us. Whereas in Government Employees the carrier had refused arbitration until a lawsuit under the policy was commenced, in this case the carrier went to arbitration and tendered the full amount awarded before petitioners sued for excess amounts. Whereas in Government Employees the insured claimed compensation within the policy limits, in this case the insured has collected the full policy limits and now demands damages in excess of the contract terms. Whereas in Government Employees the court held that a contract right to arbitration can be waived by misconduct, in this case we are asked to hold that a contract right to arbitration cannot be invoked by reason of misconduct. We find nothing in Government Employees which conflicts with the decision below.
There being no "direct conflict with a decision of any district court of appeal or of the supreme court on the same question of law",[9] we are without jurisdiction to consider the merits of petitioners' case. The writ of certiorari to the First District Court of Appeal is discharged.
ROBERTS, BOYD and OVERTON, JJ., concur.
DEKLE (Retired), J., dissents with opinion with which ADKINS, C.J., and McCAIN, J., concur.
DEKLE, Justice, Ret. (dissenting):

Can an insurer be held liable to its own insured for a bad faith refusal to settle a claim under an uninsured motorist provision of its policy?
That is the question presented here on conflict certiorari from the First District Court of Appeal opinion reported at 285 So.2d 652 (1973) which held that a complaint based on such a theory did not state a cause of action. Oral argument was waived after issuance of our writ granting the petition and setting the cause for oral argument.
Since the cause comes to us in the posture of a dismissal of the complaint for failure to state a cause of action, it must be determined whether the facts alleged in the complaint are sufficient to support recovery of the money judgment sought under any theory of law, without being concerned at this point with the question of the factual correctness of these allegations, but merely their sufficiency to support a cause of action. On this basis, the facts are as follows: The vehicle owned by petitioners, and insured under the policy in question, was struck by another vehicle negligently operated by an uninsured motorist who was solely at fault, resulting in the death of petitioners' minor son and serious permanent injury to petitioners' minor daughter. Petitioners made demand on the insurer (respondent herein) for payment to them of the full amount of uninsured motorist coverage provided by the policy they held, which demand was refused by the insurer until the existence and amount of liability imposed upon it were fixed by arbitration as provided by the policy,[1] despite only minimum coverage of $20,000.00 under uninsured motorist coverage, and in the face of one death and a serious injury, and an investigation showing the uninsured motorist to be at fault for the accident. Arbitration proceedings, nevertheless, were conducted at *728 respondent's insistence and not surprisingly resulted in an order in favor of petitioners, awarding them the full amount of coverage provided by the policy for the death and injuries of the children, just as they had offered to accept at the outset. The amount awarded by the arbitrators was thereupon paid by the insurer, following which the action sub judice was instituted.
In a two-count complaint petitioners allege that the insurer was guilty of bad faith in negotiating, evaluating and paying the benefits due them under circumstances where the insurer owed a legal duty to act in good faith; that because of such bad faith, petitioners seek judgment for the full amount of damages suffered by them as a result of the death and injuries sustained by their children (in excess of policy limits). Secondarily, they allege that as a result of the bad faith negotiations of the insurer, they were caused to incur additional expenses in the collection of benefits due them under the policy and further suffered great mental stress and physical pain as a result of such conduct. Whether the last asserted item of damage is recoverable in such a cause of action is not considered here. The complaint also alleges that the insurer's bad faith and wanton handling of petitioners' claim were motivated by malice sufficient to warrant the imposition of punitive damages.
The trial court held that the complaint failed to state a cause of action upon which any relief could be granted and accordingly entered a judgment of dismissal.[2] The First District Court of Appeal affirmed, holding that under such circumstances the insurer was entitled to invoke the arbitration clause for whatever reason it desired and that there was no fiduciary relationship between insurer and insured under the circumstances. Petition for certiorari was filed, and we tentatively accepted jurisdiction on the basis of conflict of decisions. Art. V, § 3(b)(3), Fla. Const.
The question presented, as the district court aptly summarized it at 285 So.2d 654-655, is:
"When an automobile insurance policy contains an `uninsured motorist' clause and the insured is involved in an accident with an uninsured motorist; reasonable investigation reveals that the uninsured motorist was solely at fault, and the damages clearly exceed the policy limits; the insured offers to settle with his insurer within the policy limits but the latter willfully, maliciously, and for its own selfish interest and gain, refuses to settle until the existence and amount of liability is fixed by arbitration; is the insurer liable for punitive damages or for actual damages in excess of the policy limits plus legal interest?"
The district court answered in the negative. For the reasons set forth below the question should, in my judgment, be answered in the affirmative, as Judge Spector put it so well in his able dissent to the DCA opinion. A brief review of some of the major decisions of the courts of this state dealing with an insurer's obligations to its insured and to third parties will support such an affirmative answer, and will also demonstrate conflict for our jurisdiction.
In New Amsterdam Casualty Co. v. J.H. Blackshear, Inc., 116 Fla. 289, 156 So. 695 (1934), we held that in order for an insurer to be entitled to the benefit of an appraisal clause as a defense to the insured's claim under a collision provision, the appraisal clause must be invoked in good faith by the insurer. In Auto. Mut. Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938), we determined that an insurer could be held liable to the party injured by its insured, on a basis of "bad faith failure to settle" where the insurance policy itself gave the injured third party a right to proceed against the insurer if the judgment were returned unsatisfied, on the *729 basis that the injured party was a third-party beneficiary of the contract, provided the insured himself was in a position to recover for such "bad faith failure to settle." In Canal Ins. Co. v. Sturgis, 114 So.2d 469 (Fla.App.1st 1959), aff'd. 122 So.2d 313 (Fla. 1960), it was held that an injured third party had no cause of action directly against the insurer for "bad faith failure to settle," absent the peculiar type of policy provision present in Auto. Mut. Indemnity Co. v. Shaw, supra, the court reasoning that the insurer's duty of good faith was owed to its insured rather than the third party, who was not legally damaged by the failure to settle but in fact gained thereby, and further reasoning that the amounts in excess of policy limits which the insured might be able to recover were damages resulting from the insurer's breach of contract or tort, rather than smacking of insurance. Then in American Fire & Casulaty Co. v. Davis, 146 So.2d 615 (Fla.App. 1st 1962), it was held that an insured could sue his own insurer for "bad faith failure to settle," resulting in an excess verdict against the insured, despite the fact that the insured had not satisfied the excess judgment, the First District reasoning that payment of the excess verdict was not a prerequisite to institution of the action and that the effect of the excess judgment on the insured's credit rating was sufficient damage to justify proceeding with the cause.
The landmark case of Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969), held that a direct cause of action inured to a third party beneficiary against an insurer in motor vehicle liability insurance coverage cases, this Court determining that a policy provision proscribing such a direct action was contrary to public policy and would not be enforced as such. Nationwide Mutual Ins. Co. v. McNulty, 229 So.2d 585 (Fla. 1969), established the principle that the insured's cause of action against his insurer for "bad faith failure to settle" a claim under the policy's liability provisions could properly be assigned to the injured judgment debtor, who could then maintain the action directly against the insurer. So why could not the insured himself bring an action under his own policy here?
In Thompson v. Commercial Union Ins. Co., 250 So.2d 259, 264 (Fla. 1971), this Court held that "a judgment creditor may maintain suit directly against tortfeasor's liability insurer for recovery of the judgment in excess of the policy limits, based upon the alleged fraud or bad faith of the insurer in the conduct or handling of the suit" even though the insured had not assigned the claim to the judgment creditor, since the judgment creditor was a third party beneficiary of the liability insurance policy. Quoting from Shingleton v. Bussey, supra, we noted that the third party beneficiary doctrine encompasses a cause of action against an insurer in favor of members of the public injured through the acts of an insured.
Turning to the case at hand, I fail to perceive a valid distinction between the Thompson and Shingleton third party right of action and a cause of action in favor of the insured for his insurer's bad faith failure to settle an uninsured motorist claim filed by the insured, notwithstanding the contractual arbitration provisions. See also our recent Campbell v. Government Employees Ins. Co., 306 So.2d 525 (Fla. 1974).
It is clear that, had the accident in question involved a motorist who had insurance, and had that motorist's insurer acted in bad faith in failing to negotiate petitioner's claim, petitioner, as a third party beneficiary of the other motorist's insurance policy, would have had a cause of action against that insurer.[3] The difference presented by our case is solely that the other motorist was uninsured, thus placing *730 petitioner's own insurer in the position of the other motorist's hypothetical insurer, under the provisions of the policy. This does not lead to a difference in result, since it is the public policy of this state that every insured is entitled to recover under the uninsured motorist provisions of his policy for the damages he or she would have been able to recover if the offending motorist had maintained a policy of liability insurance.[4]
In holding that the insurer could not be charged with the commission of a tort "merely because it elected to exercise a lawful option open to it under the contracts," regardless of bad faith or malice, the DCA opinion conflicts with the rule stated in Government Employees Ins. Co. v. Whitaker, 218 So.2d 198 (Fla.App.1st 1969), wherein the same First District previously held that, at least under certain circumstances, "the insurer cannot in good faith refuse to negotiate settlement" under an uninsured motorist clause and demand arbitration, even though the uninsured motorist provisions of the policy contained an arbitration clause. It also conflicts with New Amsterdam Casualty Co. v. J.H. Blackshear, Inc., supra, in which we held that in order for an insurer to be entitled to the benefit of an appraisal clause as a defense to the insured's claim, the appraisal clause must have been invoked in good faith by the insurer. In holding the arbitration clause here involved to be a complete defense to the claim, the DCA rendered a decision clearly in conflict, giving rise to our jurisdiction pursuant to Art. V, § 3(b)(3), Fla. Const.
The insurer makes much of the adversary nature of the relationship between itself and its insured under the uninsured motorist provisions of the policy, contending that because of this adversary situation, it does not have any fiduciary duty toward its insured to act in good faith in the settlement of his claim, despite the relationship of insurer and insured existing between them. Yet surely it cannot be argued that this relationship is more adverse than that existing between insurer and a third party claimant with whom the insurer has no contractual ties. Such a third party claimant is clearly entitled under the law to bring an action against the insurer for bad faith in settlement negotiations, either with or without an assignment of the cause of action from the insured,[5] despite the lack of any fiduciary obligation of the insurer toward such a third party. Even in a case where a third party claimant is not damaged by the failure to settle, and is in fact benefitted to the extent of the excess of the verdict over the rejected settlement offer, the third party may nonetheless maintain the action for the insurer's breach of his obligation of good faith.[6]
The State's public policy is to place the insured in the same position as if the uninsured motorist had maintained a liability policy with the statutorily-prescribed minimum limits.[7] Accordingly, in a situation involving an accident between its insured and an uninsured motorist, the insurer stands in the shoes of the hypothetical insurer of the uninsured motorist, and owes its actual insured at least the same obligation of good faith it would owe if it in fact were the insurer of that motorist. The public policy involved is thereby fulfilled when the insurer assumes such position of the uninsured motorist's hypothetical liability insurer, who in turn owes to *731 petitioners an obligation of good faith dealing.
Basically, the insured, in contracting to purchase uninsured motorist coverage, entered into a covenant with the insurer to obtain insurance coverage to protect his interests in the event of an accident involving an uninsured motorist; this agreement contains an implied obligation that the insurer will handle such a claim in good faith. Government Employees Ins. Co. v. Whitaker, supra. It would be anachronistic to hold that an insurer owes a duty of good faith in handling the liability claim of a third person totally unrelated to the parties to the contract of insurance[8] while at the same time holding that the insurer owed no such obligation of good faith to its own insured, who has paid premiums for the uninsured motorist coverage for the specific purpose of protecting himself from damages inflicted by an uninsured motorist.
It is clear that the insurer owes a duty of good faith in settlement negotiations to third party beneficiaries. Thompson v. Commercial Union Ins. Co., supra. It is also clear that an insurer owes its own insured a duty of good faith in handling the insured's claims under his own policy. New Amsterdam Casualty Co. v. J.H. Blackshear, Inc., supra; Government Employees Ins. Co. v. Whitaker, supra. If anything, more reason for the existence of a duty of good faith is present in the case of an uninsured motorist claim by the insured than in the case of a liability claim by a third party beneficiary, since the additional factor is present that the insured has parted with consideration for the coverage in paying the premium; he is not a stranger to the contract of insurance, but a party to it who has paid his money to the insurer in the reasonable expectation that a good-faith claim will receive good-faith treatment. An obligation of good faith is inherent in the provisions of a liability insurance policy, implied by law.[9] If the facts recited in the complaint sub judice are accurate, this obligation of good faith has been breached; and for that breach, a cause of action arises.
Just as an insured can sue his own insurer for "bad faith failure to settle" a claim under the liability provisions of his policy,[10] so too should he be able to maintain a cause of action, in appropriate circumstances, for his insurer's "bad faith failure to settle" his own claim under the uninsured motorist provisions of his policy. Justice, public policy, and the implied obligation of good faith in dealing with one's own insured under the contractual provision, all demand the same result. In my view, therefore, petitioner's amended complaint did in fact state a cause of action upon which relief could be granted, and hence the trial court, in dismissing the amended complaint, and the DCA, in affirming that judgment, were in error.
I would accordingly quash the decision of the First District Court of Appeal at 285 So.2d 652, with directions to remand the cause to the Circuit Court of the Second Judicial Circuit, in and for Leon County, to reinstate the amended complaint and proceed to trial on it.
I, therefore, most respectfully dissent.
ADKINS, C.J., and McCAIN, J., concur.
NOTES
[1] Fla. Const., art. 5, § 3(b) (3).
[2] In this legal posture we must accept as true the allegations of the complaint that respondent acted in bad faith in refusing to pay on petitioners' demand the full policy limits under their contract, and insisting on the contract right of arbitration.
[3] "The legal relationship existing between the insured and his insurer on claims for ... damages caused by uninsured motorists is that of debtor and creditor in which no fiduciary relationship is present." Baxter v. Royal Indemnity Co., 285 So.2d 652, 657 (1st Dist. Ct.App.Fla. 1973).
[4] New Amsterdam Casualty Co. v. J.H. Blackshear, Inc., 116 Fla. 289, 156 So. 695 (1934).
[5] See Campbell v. Gov't Employees Insur. Co., 306 So.2d 525 (Fla. 1974).
[6] Thompson v. Commercial Union Insur. Co., 250 So.2d 259 (Fla. 1971); Nationwide Mutual Ins. Co. v. McNulty, 229 So.2d 585 (Fla. 1970); Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969); Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938).
[7] E.g., Holbein v. Rigot, 245 So.2d 57 (Fla. 1971); Associated Heavy Equip. Schools, Inc. v. Masiello, 219 So.2d 465 (3d Dist.Ct. App.Fla. 1969).
[8] E.g., Griffith v. Shamrock Village, Inc., 94 So.2d 854 (Fla. 1957).
[9] Fla. Const. art. 5, § 3(b)(3).
[1] In connection with the uninsured motorist coverage, the policy stated:

"... provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration."
[2] Third Dist. has now held similarly, citing First Dist. Baxter, in Midwest Mutual Ins. Co. v. Brasecker, 311 So.2d 817 (1975), op. filed 4-15-75.
[3] Thompson v. Commercial Union Ins. Co., 250 So.2d 259 (Fla. 1971); Nationwide Mutual Ins. Co. v. McNulty, 229 So.2d 585 (Fla. 1969).
[4] Harmon v. State Farm Mutual Auto. Ins. Co., 232 So.2d 206 (Fla.App.2d 1970); Continental Ins. Co. v. Wallace, 233 So.2d 195 (Fla.App.3d 1970); Standard Accident Ins. Co. v. Gavin, 184 So.2d 229 (Fla.App. 1st 1966), cert. dism'd, 196 So.2d 440 (Fla. 1967); Davis v. U.S. Fidelity & Guaranty Co., 172 So.2d 485 (Fla.App.1st 1965); Mullis v. State Farm Mutual Auto. Ins. Co., 252 So.2d 229, 234 (Fla. 1971); Chandler v. Government Employees Ins. Co., 342 F.2d 420 (CA 5, 1965) (applying Florida law).
[5] See footnote 3.
[6] Id.
[7] See footnote 4.
[8] Auto. Mut. Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938); Nationwide Mutual Ins. Co. v. McNulty, supra; Thompson v. Commercial Union Ins. Co., supra.
[9] American Fire & Cas. Co. v. Davis, 146 So.2d 615 (Fla.App.1st 1962); Campbell v. Government Employees Ins. Co., supra.
[10] Government Employees Ins. Co. v. Whitaker, supra, and Auto Mutual Indemnity Co. v. Shaw, supra, and Campbell v. Government Employees Ins. Co., supra.