343 So.2d 816 (1976)
Gus George BUTCHIKAS, Petitioner,
v.
TRAVELERS INDEMNITY COMPANY, Respondent.
No. 47733.
Supreme Court of Florida.
June 30, 1976.
Rehearing Denied April 7, 1977.
Lefferts L. Mabie, Jr. and James F. McKenzie of Levin, Warfield, Middlebrooks, Graff, Mabie, Rosenbloum & Magie, Pensacola, for petitioner.
A.G. Condon, Jr. of Holsberry, Emmanuel, Sheppard & Condon, Pensacola, for respondent.
ENGLAND, Justice.
This case is before us to review a divided decision of the First District Court of Appeal, reported at 313 So.2d 101, relative to jury awards for punitive damages and mental anguish in so-called "excess damage" suits against liability insurers. Conflict is demonstrated between the decision below and Campbell v. Government Employees Ins. Co., 306 So.2d 525 (Fla. 1974), as a consequence of which we have jurisdiction under Article V, Section 3(b)(3) of the Florida Constitution.
The legal questions brought to us arise out of an automobile-motorcycle accident, the defense of a lawsuit against the driver of the automobile by his insurance carrier, a jury verdict against the driver in excess of his insurance policy limits, a lawsuit *817 against the carrier by the insured driver, and a jury verdict awarding damages in favor of the insured for (i) his liability to the injured motorcyclist in excess of policy limits, (ii) mental anguish as a result of all the problems caused by the carrier, and (iii) punitive damages. A detailed recitation of the facts appears in the district court's opinion.
The district court reviewed the evidence adduced at trial and concluded that the award of compensatory damages for the insured's "excess" liability was supported by the evidence. A majority of the district court reversed the jury's awards for punitive damages and mental anguish, however, finding the evidence insufficient to support the former and finding no legal basis to support the latter. Our review of the record discloses no basis on which to discuss or disturb the district court's decision in regard to the award of damages for the insured's excess liability. The legal issues relating to the award of damages for mental anguish and for punitive damages, however, deserve full discussion.
1. Punitive Damages. Both the majority and dissent in the district court rely on our Campbell decision to support their diametrically opposed conclusions. This would seem to suggest that, as a rule of law, Campbell is not as clear as it might be. The rule of law announced in Campbell is not the least bit ambiguous, however. We merely held in Campbell that:
"[T]he trial judge was not in error in concluding the course of conduct of the insurer with the policyholder was such the question of punitive damages should be decided by the jury. And the jury found from the recited facts the policyholder was entitled to punitive damages. We cannot as a matter of law gainsay them. There was involved the elements of concealment and misrepresentation  a continued course of dishonest dealing on the part of insurer toward insured." 306 So.2d at 532.
Applying that rule of law to this case would require an affirmance on this issue, since the evidence in no way supports misrepresentation or a continued course of dishonest dealing.
The confusion in application of the rule of law stems, we believe, from semantics. Justice Overton, dissenting in Campbell on this issue, argued for a more stringent test to support punitive damages  one which would involve at least maliciousness, an intentional course of bad faith conduct, or a very severe breach of duty. The majority below, apparently leaning more toward that test, suggested that an award of punitive damages in cases of this type requires "malice, wantonness, willfulness, gross bad faith or reckless indifference to the rights of its insured."[1] Judge Boyer, dissenting below, appears to have a less strict philosophical approach toward punishing insurance carriers with punitive damages in these kinds of cases.
The difference between the two views of Campbell below can be explained, we believe, on a wholly different basis; namely, that the present case is not like Campbell at all. Campbell involved active concealment and active misrepresentations. This case involves non-feasance and a complete lack of essential communication between the insurance company and its insured. Viewed in that light we can distinguish Campbell entirely and adopt a rule of law more suited to this class of cases.[2]
The one fact of record which is critical to this issue, aspects of which appear in *818 the district court's opinion, is that counsel for the insurance carrier and others involved in handling the motorcyclist claim on behalf of the company wholly ignored their insured from the beginning to the end of the proceedings. The carrier defends this fact on several grounds:
(1) that the insured was plainly responsible for the accident;[3]
(2) that pre-trial settlement offers by the injured motorcyclist, as well as the carrier's own evaluation of the case, were below policy limits; and
(3) that the motorcyclist's settlement offer made after trial was not communicated to the insured due to his inaccessibility[4] and counsel's reasonable belief that a pending motion for new trial was well founded.
Petitioner's point with respect to punitive damages is that an insurance carrier has a fiduciary responsibility to its insured,[5] and that a failure to honor that responsibility (no matter how labeled) should entitle a jury to punish the company as a deterrent to future misbehavior by it and by other companies similarly situated. (Petitioner's position, of course, once more focuses attention on the conflict of interest which inheres for attorneys and insurers under standard contracts of insurance which require the company, and their counsel, to defend claims under the insured's policy.[6])
Obviously, we in no way condone the company's conduct in this case. We do, however, view this class of case as less egregious than those involving deliberate, overt and dishonest dealing. In this class of case the insured can be made whole by a compensatory damage award and a recovery of attorneys' fees. We find it hard to justify a policy for Florida which awards more.
The social policy for punitive damages, as articulated by Mr. Justice Ervin in Campbell, is a sound one, but its application here is misplaced. A potential award in excess of policy limits plus attorney's fees should be stimulus enough for an insurer concerned with its financial liability to communicate with its insured that he or she may have personal, financial exposure.
As to punitive damages, therefore, we affirm the judgment of a majority of the district court.
2. Mental Anguish. Petitioner offers us no Florida precedent for awarding compensation for mental anguish in an "excess" case, and our independent research has revealed none. We are referred to World Ins. Co. v. Wright, 308 So.2d 612 (Fla. 1st DCA), cert. denied, 322 So.2d 913 (Fla. 1975), however, as authority for an award of this type in a non-excess insurance case. We do not find that case persuasive by reason of its lack of factual analysis and different procedural context.[7] Rather, we note that in Campbell, Mr. Justice Ervin commented that mental suffering is frequently not compensated by an award of compensatory damages, and for that reason punitive damages *819 are well suited to fill that void.[8] We are left to inquire, then, in situations where there is no basis for punitive damages as we have here ruled, whether there should exist a middleground for cases in which punishment is not appropriate as a deterrent to the conduct of the carrier but should be provided as a reward beyond recompense out of solicitude for the travail of the insured? We think not. The rule in Florida has been that, absent a physical injury, a plaintiff can recover damages for mental anguish only where it is shown the defendant acted with such malice that punitive damages would be justified. Crane v. Loftin, 70 So.2d 574 (Fla. 1954). It would be far-reaching indeed to expand that notion to permit financial recovery for all of the emotional and mental strains which modern society inflicts on an individual by reason of its inevitable clashes.
We note the view expressed in the dissenting opinion in the district court that insurer-defendants should be distinguished from other defendants because liability insurance is obtained in the first instance to avoid mental distress resulting from the uncertain risk of financial liability at a future time. It is axiomatic, however, that in "excess" cases the fact and degree of financial exposure are brought about by the insured's decision to risk the financial and emotional consequences which naturally flow from the insufficiency of coverage. It is, in our view, sufficient protection as a matter of public policy if recovery for mental distress is available through a punitive damage award whenever the insurer has acted with such malice that a jury should be given the discretion to impose financial punishment. In such cases, it can generally be said that the degree of mental anguish is beyond the norm which a complicated society, unfortunately, imposes upon us all.[9]
For these reasons, the judgment below is affirmed in all respects.
OVERTON, C.J., and ROBERTS and BOYD, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] 313 So.2d at 104.
[2] Want of care and inattention to the rights of another were held to give rise to a jury issue of punitive damages in Griffith v. Shamrock Village, Inc., 94 So.2d 854 (Fla. 1957). That case, however, involved a tort action rather than a contract action. This distinction was emphasized in Griffith (see 94 So.2d at 858) and has subsequently been relied upon to condition the availability of punitive damages awards. American Int'l Land Corp. v. Hanna, 323 So.2d 567 (Fla. 1975).
[3] The company suggests that there was no reason to investigate the accident since liability was so manifest, that there was good reason not to involve the insured in the trial because of his lack of fluency, and that the insured's belligerence would, in the company's opinion, hamper rather than aid its defense of the damage issue.
[4] Mr. Butchikas was in Greece, having notified the carrier of his previously-planned trip and secured their approval of his absence.
[5] See Baxter v. Royal Indemnity Co., 285 So.2d 652 (Fla.1st DCA 1973), cert. discharged, 317 So.2d 725 (Fla. 1975).
[6] Cf. Southeast Title & Ins. Co. v. Caldwell, 326 So.2d 12, 16 (Fla. 1975) (on rehearing).
[7] The claim in World was based upon an intentional infliction of emotional distress. There is absolutely no evidence upon which it could be concluded that the respondent-insurer in this case intended to cause the mental anguish which petitioner allegedly suffered.
[8] 306 So.2d at 531.
[9] Nothing in this decision in any way affects the possible recovery of punitive damages and damages for mental anguish which may be available in a non-contract lawsuit. See Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950).