390 So.2d 724 (1980)
COTTON STATES MUTUAL INSURANCE COMPANY, Appellant,
v.
Jeanne H. TREVETHAN, Appellee.
No. NN-364/T1-83.
District Court of Appeal of Florida, Fifth District.
June 27, 1980.
Rehearing Denied August 28, 1980.
Monroe E. McDonald of Sanders, McEwan, Mims & McDonald, Orlando, for appellant.
Anthony I. Provitola, DeLand, for appellee.
ORFINGER, Judge.
We review an "excess judgment" entered against appellant following a jury trial.
Jeanne Trevethan was seriously injured when a motorcycle she was driving collided with an automobile driven by Diane Fowler and owned by her husband, Philip Fowler. She brought suit against the Fowlers and joined appellant as their insurer. A trial of that action resulted in a verdict for Trevethan for $525,000. Judgment was entered thereon against appellant for its policy *725 limits of $100,000, and against the Fowlers for the remaining $425,000. That judgment was appealed and was affirmed, 358 So.2d 121 (Fla. 1st DCA), cert. den. 364 So.2d 883 (1978), prior to the creation of this court.
Appellee then commenced these proceedings against appellant insurer,[1] contending that the insurer had acted in bad faith in refusing to settle the original claim for the policy limits despite appellee's frequent offers to settle her claim for such limits. A jury trial resulted in a verdict against the insurer for $425,000, and the insurer appeals the judgment entered on such verdict. Appellee cross appeals the refusal of the trial court to submit to the jury appellee's claim for punitive damages.
Appellant first contends that there was no evidence of bad faith on its part to sustain the jury verdict and that it was entitled to a directed verdict. The evidence reveals that the collision occurred on a curve, and that Trevethan and Fowler each contended that the other was on the wrong side of the road. Investigation disclosed two eye witnesses who placed the collision on Trevethan's side of the road. The insurance company soon became aware of the extensive and serious injury to the 21 year old claimant: the loss of her left leg above the knee, infection of the wound site by chronic osteomyelitis which might necessitate additional surgery, the need to fit a prosthetic device and the attendant rehabilitation that accompanies an artificial limb, the assertion by claimant that her marriage had terminated because her husband couldn't cope with the loss of her leg, her need for psychiatric assistance to help her cope with the emotional trauma, and the attendant medical expenses.
The home office advised the branch claims office that "... this looks like a bad one ..." and wondered how they would get around the testimony of the two eye witnesses. At that time the memorandum also suggested that the reserve be raised to at least $25,000. After suit was filed, appellant's branch claims manager wrote to the Fowlers acknowledging receipt of the suit papers and advised them that the company had retained attorneys to defend the action at the company's expense (not the attorneys appearing in this case for appellant). He also advised them that because the damage request was drawn in such language as would make it possible for a verdict to be rendered in excess of their policy limits, they might wish to confer with their "... own personal attorney ..." at their own expense, to advise them in this matter. The letter concluded with this statement: "At the present time, we believe that the claim against you does not exceed the limits of protection afforded by your policy."
More than a year following the accident and after extensive discovery, claimant's attorney wrote to the insurer's trial counsel and outlined his evaluation of the case, taking the position that the Fowlers' liability was clear and that the extensive injuries would produce a verdict for Trevethan in excess of $300,000. Nevertheless, because the policy limits had now been disclosed, he offered to settle the claim for the policy limits of $100,000. The reply was a sarcastic denunciation of the claim and of the claimant's attorney, flatly rejecting any settlement, indicating that liability was clearly 100% on the claimant and refusing to even give the claim nuisance value consideration. Copies of both letters were transmitted to and received by the insurer. Although the settlement offer had a time limit, it was renewed again, and the day following the commencement of the trial in the personal injury case the appellant's trial counsel advised appellant of claimant's continuing demand to settle for the policy limits.
Appellant's branch claims manager testified that he never corresponded with the *726 insureds about the settlement demand, that he did not know if anyone had ever advised the Fowlers of the claimant's evaluation of the claim but that he did not, that he never authorized his trial counsel to attempt to negotiate a settlement of the claim nor did he attempt to negotiate such settlement, that the reserve of $25,000 was set on the consideration of the injuries, the damages and the liability. He stated that he never instructed his trial counsel to advise the insureds of the "... likelihood that an award could be made against them that was in an amount greater than $100,000," nor did he instruct anyone else to do so. The insurance policy introduced in evidence includes the provision that the company will defend a suit arising under the policy and may make such settlement of any claim or suit as it deems expedient.
This is a summary of the evidence at the close of plaintiff's case, and it was sufficient to withstand the motion for directed verdict. Many cases discuss the liability of an insurer for a verdict in excess of policy limits, and a good summary of those cases is found in Boston Old Colony Insurance Company v. Gutierrez, 386 So.2d 783 (Fla. 1980), where the Supreme Court thus reviewed the existing case law:
... An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938). For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. Liberty Mutual Ins. Co. v. Davis, 412 F.2d 475 (5th Cir.1969). This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. Ging v. American Liberty Ins. Co., 423 F.2d 115 (5th Cir.1970). The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Government Employees Ins. Co. v. Grounds, 311 So.2d 164 (Fla. 1st DCA 1975), cert. discharged, 332 So.2d 13 (Fla. 1976); Government Employees Ins. Co. v. Campbell, 288 So.2d 513 (Fla. 1st DCA 1973), quashed, 306 So.2d 525 (Fla. 1974); Baxter v. Royal Indemnity Co., 285 So.2d 652 (Fla. 1st DCA 1973), cert. discharged, 317 So.2d 725 (Fla. 1975). Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith. American Fidelity and Casualty Co. v. Greyhound Corp., 258 F.2d 709 (5th Cir.1958); DeLaune v. Liberty Mutual Ins. Co., 314 So.2d 601 (Fla. 4th DCA 1975). The question of failure to act in good faith with due regard for the interests of the insured is for the jury. Campbell v. Government Employees Ins. Co., 306 So.2d 525 (Fla. 1974).
.....
Appellant produced evidence to show that its trial counsel repeatedly urged the appellant that there was no liability on the part of the insureds. This was asserted on the basis of testimony and statements of persons other than eye witnesses, including a reputable accident reconstruction expert retained by appellant's trial counsel, and physical evidence at the scene. He strongly urged that the eye witnesses who favored claimant's version of the accident were not credible. He asserted that the "sheer weight of the defense evidence will overwhelm any sympathy" for claimant and that the case had at most only nuisance value which he knew claimant's attorney would not recognize. As a result, no settlement offer was ever made to the claimant, *727 nor was there any attempt to negotiate her earlier demand.
The Fowlers both testified that they were made aware of the settlement demand of $100,000 before the original trial. Both thought Mrs. Fowler was not at fault. Mr. Fowler recalled no conversation about his wanting to either settle or try the case, but he did testify that with the knowledge he had, he felt that claimant should not get anything.
Trial counsel for the insurer in the original proceeding testified that he evaluated the claim at between $200,000 and $225,000 assuming the insured to be 100% at fault, but at no time did he ever advise the Fowlers of this evaluation because he thought it inconceivable that the jury would find Diane Fowler negligent to the degree that would consume all her insurance coverage. From this testimony, coupled with the original letter to Fowler advising that the claim would not exceed their policy limits, the jury could have concluded that when the Fowlers indicated a willingness to proceed to trial they had not been advised of the possibility of an excess verdict or the potential outcome of the litigation and that they had not been given complete, good faith information as to their own potential exposure. Traveler's Indemnity Company v. Butchikas, 313 So.2d 101 (Fla. 1st DCA 1975), aff'd. 343 So.2d 816 (Fla. 1976). The jury could conclude from this evidence that the insurance company which had complete control of negotiations and settlement, acted upon its own interests rather than the interests of its insured, particularly when their own attorney evaluated the potential value of the case at the amount which could expose the insureds to greater loss than the insurer, and that it did not act in good faith or deal fairly with its insureds when it refused to negotiate at all. Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938); Liberty Mutual Insurance Company v. Davis, 412 F.2d 475 (5th Cir.1969). If the circumstances are such that a reasonably prudent insurer with the obligation to pay all the recoverable expenses would settle for an amount within the policy limits, then the insurer has the obligation to do so, Baxter v. Royal Indemnity Company, 285 So.2d 652 (Fla. 1st DCA 1973), cert. discharged, 317 So.2d 725 (Fla. 1975). In determining what is good or bad faith in particular circumstances, the issue is ordinarily left to a jury to decide, Campbell v. Government Employees Ins. Co., 306 So.2d 525 (Fla. 1974).
The facts in Boston Old Colony are materially different from the facts now before us. Unlike Boston Old Colony, where the insurer was ready to settle, expressed its willingness to settle and offered to settle for its policy limits prior to trial, the insurer here never offered to settle, refused to even talk or negotiate a settlement and never disclosed to its insureds their own potential exposure if the case went to trial. The insured here was not prosecuting a counterclaim and did not stand in the way of a settlement. From the totality of the evidence, the jury could have concluded that the insurer was acting upon what it considered to be its interest alone. The trial court did not err in denying appellant's motion for directed verdict at the close of all of the evidence.
Appellant's next point challenges the trial court's refusal to instruct the jury that trial counsel retained by the insurer to defend it and the Fowlers were independent contractors and on the law pertaining to liability for acts of an independent contractor. The trial court did not err in refusing to give such instruction.
The claim here is based on the alleged bad faith of the insurer, in its refusal to settle or even negotiate a settlement prior to the first trial, when it had an opportunity to settle within the policy limits. There is no dispute that the insurer retained complete control of the defense of the action and of settlement negotiations, and if it relied on the advice of its attorneys to determine its ultimate exposure, this is but one of the factors for the jury to consider in determining the issue of bad faith. Appellant relies on the California case of Merritt v. Reserve Insurance Company, 34 Cal. App.3d 858, 110 Cal. Rptr. 511 (1973) as *728 authority for the proposition that in defending the company and the insured the trial attorney acts as an independent contractor and the insurer is therefore not liable for negligent defense of the action. Whatever may be the merits of that position (a point we need not decide) suffice it to say that the case sub judice does not involve a claim of negligent defense, so the California case is completely distinguishable. It has been held that the failure to follow counsel's advice is evidence of bad faith, Thompson v. Commercial Union Insurance Co. of New York, supra, and we now hold that reliance on the advice of counsel is similarly evidence to be considered on the issue of bad faith, and it does not insulate the insurer from a bad faith excess judgment. Cf. State Farm Fire and Casualty Company v. Maza, 328 So.2d 547 (Fla. 3d DCA 1976). See also, Anno: 63 A.L.R.3d 725.
The last point for consideration is appellee's contention that the court should have submitted the issue of punitive damages to the jury. The evidence submitted was insufficient to support a punitive damage award, and the trial judge was correct in so ruling. Butchikas v. Travelers Indemnity Co., 343 So.2d 816 (Fla. 1976).
Appellant's other points have been considered and are without merit. Finding no error, the judgment below is
AFFIRMED.
FRANK D. UPCHURCH, and SHARP, JJ., concur.
NOTES
[1] The Florida Supreme Court has ruled that a judgment creditor may file a direct action against the tort-feasor's liability insurer to recover a judgment in excess of policy limits based upon alleged fraud or the bad faith of the insurer in the conduct or the handling of the suit. Thompson v. Commercial Union Insurance Co. of New York, 250 So.2d 259 (Fla. 1971).